[No. 8,220.—In Bank.]
July 5, 1882.

# THE CITY OF LOS ANGELES *v.* THE LOS ANGELES CITY WATER COMPANY.

CONTRACT—LEASE—MUNICIPAL CORPORATION—LICENSE.—The plaintiff entered into an agreement with the predecessors in interest of the defendant, who were the holders of a lease of the plaintiffs' water works, by which for an annual rent reserved, and other considerations, the holders of the lease and their assigns were granted the right to sell and distribute water for domestic purposes and to receive the rents and profits thereof for their own use, etc. Afterwards the Mayor and Council of the plaintiff passed an ordinance to impose monthly rates of license upon all persons or corporations not municipal, vending water for domestic purposes; and the action was brought to collect such rates.

*Held:* The plaintiff had already reserved a sum to be paid by defendant for the privilege of vending water for domestic purposes, and could not, during the term of the lease, increase the amount to be paid for the privilege granted.

APPEAL from a judgment for the defendant in the Superior Court of the County of Los Angeles. HOWARD, J.

*H. T. Hazard* and *H. T. Gage,* for Appellant.

There is no power in the Council to divest itself of the right to impose a license tax on persons doing business in the city. (*Mott* v. *Penn. R. R. Co.,* 30 Penn. St. 27.) Again, the original contracting individuals had one set of rights as individuals, but when they or their assigns associated themselves as a Water Company—a corporation—they, as it were, laid aside certain of the individual rights, and took others, and only such rights as were derived from that law, and were subject only to such duties as it imposed. And the Legislature, by special act, could not increase or diminish either. (*San Francisco* v. *S. V. W. W.,* 48 Cal. 514.) " No corporate rights or powers can be conferred by special grant, but must be derived under general laws." (Id. 513, 514.)

*Thom & Stephens,* for Respondent.

The city having by its contract given the water company " the right to sell and distribute water for domestic purposes," can not now charge a license for the occupation of " vending

water for domestic purposes." When States and cities contract "they come down to the level of ordinary individuals; their contracts have the same meaning as that of similar contracts between private persons." (*Murray* v. *City of Charleston*, 96 U. S. 445; *Dodge* v. *Woolsey*, 18 Howard U. S. 311; *State Bank of Ohio* v. *Knoop*, 16 id. 369.) A municipal corporation having by contract given privileges, can not impair the contract by exacting license tax. (*Mayor* v. *T. A. R. R.*, 33 N. Y. 42; *Mayor* v. *S. A. R. R.*, 32 id. 273; *Stein* v. *Mayor of Mobile*, 49 Ala. 362; S. C., 20 Am. Rep. 283.)

MORRISON, C. J.:

On the fifth day of July, 1882, Department Two of this Court delivered the following opinion in the above entitled case:

"The plaintiff being the owner of water works, in 1865 leased them to Sansevaine, who subsequently assigned to others, and they to the defendant. In 1868 the plaintiff made an agreement with the then holders of the lease, by which, for an annual rent reserved, and other considerations named, the lessees and their assigns were granted the right to sell and distribute water for domestic purposes and to receive the rents and profits thereof for their own use and benefit—they, however, to furnish water for the public schools, city hospitals, and jails, free of charge; and the city reserved the right to regulate rates. This agreement was ratified by the Legislature April 2, 1870. In 1870, after the defendant became the assignee of the lease, the above mentioned agreement was by ordinance modified by reducing the annual rent to four hundred dollars, which sum, it was provided, 'shall be received in full payment for all rents due or to grow due from said water company to said city for the uses and privileges given and granted by said ordinance' [the ordinance of 1868.]

"In 1879, the Mayor and Council of plaintiff passed an ordinance to impose monthly rates of license upon all persons or corporations not municipal, vending water for domestic purposes. This action was brought to recover such rates. The Court below rendered judgment for defendant, holding that under the lease and ordinances above referred to, it was not liable to pay any sum.

"The Court was correct in its judgment. The plaintiff had already reserved a sum to be paid by defendant for the privilege of vending water for domestic purposes, and it could not change its contract in the manner proposed. The privileges granted by the lease and the ordinance of 1868 were already vested in the defendant, as strongly as they could be by a license under the ordinance of 1879. A license is a grant of permission or authority. The defendant already had permission and authority granted by ordinance and ratified by the Legislature. The city can not, during the term of the lease, of its own motion, increase the amount to be paid for the privileges granted.

"It is hardly necessary to say that the point made by the appellant, that neither the city nor the Legislature can grant or alienate any of the rights of sovereignty, has no application to this case."

The case has been heard in bank, and the foregoing opinion is hereby approved, with the following addition thereto:

The case of *Stein* v. *Mayor, etc., of Mobile,* 49 Alabama, 362, is in point. It was there held that "the corporate authorities of the city of Mobile, having entered into a contract with Albert Stein on the twenty-sixth day of December, 1840, by which they transferred to him certain water works then belonging to the city for the term of twenty years, and until said water works were redeemed by the city as therein provided, granting to him the exclusive privilege of supplying said city with water during said term, and stipulating that on his performance of all the duties imposed on him by said contract he shall and may retain quiet possession of said water works during the said term without let, molestation or hindrance on the part of the city; the corporate authorities of said city can not, during the continuance of said contract, require the said Stein to pay herein a license or tax for carrying on his said business within the limits of the city."

The contract between the city of Mobile and Stein was substantially the same as the contract between the plaintiff and the party under whom defendant in this case claims, and there, as well as here, an attempt was made by the city authorities to impose upon the lessee the obligation of paying a license,

or tax, for the privilege of carrying on the business. The Court in that case uses the following language:

"The ordinance complained of is not merely a police regulation.. The police power of the city refers rather to the regulation of its morals than its property. Blackstone's definition of this power is: 'The due regulation and domestic order of the kingdom, whereby the inhabitants of the State, like members of a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood, and good manners, and to be decent, industrious, and inoffensive in their respective stations.' (Black's Com. 162; Cooley's Const. Lim., p. 572 *et seq.*, and cases cited in the notes.) This is no regulation of this sort. It is simply a tax in restraint of a privilege already granted by the city to the grantee, Stein. The privilege or right to carry on the business of the Mobile Water Works in the city, having been once granted can not be reasserted. The ordinance which attempts this impairs the grant, and is void."

The case of *The Mayor etc., of the City of New York* v. *Second Avenue Railroad Company*, was an action to recover a penalty of fifty dollars imposed by an ordinance upon the proprietor of every passenger railroad car running in the city of New York below One Hundred and Twenty-fifth street, who should not procure a license from the mayor for each car and pay annually therefor the sum of fifty dollars, and the defendant set up as a defense to the action an agreement made between the plaintiffs and the defendant's assignors, dated December 15, 1852, by which permission was granted to such assignors to construct and operate a railroad on Second Avenue, and it was contended that the plaintiffs were estopped by such agreement from requiring any license. The Court of Appeals sustained the defense, holding that to require the railroad company to take out a license was imposing a tax upon it in derogation of its rights of property. (32 N. Y., 261.)

In a subsequent case, *The Mayor, etc.,* v. *The Third Avenue Railroad Company,* (33 N. Y. 42), the same question was presented, and the same conclusion was reached. The Court there say: "The increase of the sum payable as a license fee under the ordinance of 1858, beyond the amount provided for by the stipulations in the contract of 1853, so far as it

was in derogation of defendant's rights, must be deemed illegal and void. It was not the exercise of the power of municipal regulation reserved by the terms of the grant, and which the Common Council had no authority to obviate; but it was simply an attempt by one of the parties to a contract to revoke a provision inserted for the benefit of the other. The Common Council could not lawfully impose a penalty for non-compliance with an illegal exaction."

The authorities of the city of Los Angeles by a contract (the validity of which has not been challenged by either party), and for certain valuable considerations therein expressed, granted to the defendant's assignors the privilege of supplying the city of Los Angeles and the inhabitants thereof with fresh water for domestic purposes, with the right to receive the rents and profits thereof to their own use. As was said by the Supreme Court of Alabama in the case of *Stein* v. *Mayor, etc., of Mobile, supra,* "the power to supply the inhabitants of the city with water necessarily implies the right to carry on the business in the city. If this right could be interfered with at all—as there is no limit to the interference—it may be defeated altogether. The contract shows that this was not the purpose of the parties. The city government is a creature of the State legislation. Its powers, then, are restrained by all the constitutional limits of the General Assembly of the State. It can not pass by-laws or ordinances which impair the obligation of contracts. (Ang. & Ames on Corporations, Section 332, 333 ; Cooley's Con. Lim. pp. 192, 193, 194, 195.) It can not then revoke its grant. This would be to impair its contract. (*Fletcher* v. *Peck,* 6 Cranch. 137.) The ordinance which assails the privilege already granted impairs the contract on which it depends, and is void; and the tax levied under its authority, by way of license, can not be supported.

The principles enunciated in the foregoing cases, are eminently sound and just, and are directly applicable to the case we are now considering. The city of Los Angeles, by its solemn contract, and for various considerations therein stated, gave to the party under whom defendant claims, the privilege of introducing, distributing and selling water to the inhabitants of that city, on certain terms and conditions, which de-

fendant has complied with, and it was not within the power of the city authorities, by ordinance or otherwise, afterward to impose additional burdens as a condition to the exercise of the rights and privileges granted.

Judgment and order affirmed.

THORNTON, MYRICK, and SHARPSTEIN, JJ., concurred.