CITY OF MILWAUKEE, Appellant, vs. CITY OF WEST ALLIS, Respondent.
CITY OF WEST ALLIS, Respondent, vs. CITY OF MILWAUKEE, Appellant.

*January 9—April 2, 1935.*

*Max Raskin,* city attorney of Milwaukee, and *Alfred R. Gandrey* and *H. A. Kovenock,* assistant city attorneys, for the appellant.

*Laurence C. Gram,* city attorney of West Allis, for the respondent.

The following opinion was filed February 5, 1935:

ROSENBERRY, C. J.   We shall not attempt to state all of the complicated facts to which reference is made in briefs of counsel, but only such as are necessary to an understanding of the questions decided.

It appears that on October 18, 1905, the city of Milwaukee entered into a written contract with the village (now city) of West Allis, hereinafter called West Allis, wherein West Allis agreed to buy water from Milwaukee at six cents per hundred cubic feet.   There were provisions relating to the laying of pipe, compliance by West Allis with the rules and regulations of the city with respect to its water system, maintenance of the distributing system, and the right of West Allis to distribute the water purchased by it.   On October 25, 1926, the

common council of the city of Milwaukee adopted a resolution by which it declared the contract to be terminated as of January 1, 1930. One of the principal questions in the case is whether or not this action, together with the notices served pursuant to it, operated to terminate the contract. West Allis claims that Milwaukee was without power to terminate the contract, which it claims was by its terms intended to continue until West Allis should become a part of Milwaukee by annexation. Milwaukee, on the other hand, contends that no term of service was fixed by the contract, and it might therefore terminate the contract upon reasonable notice. The claim of West Allis is based upon an inference drawn from language used in provisions of the contract relating to service.

By the first paragraph of the contract it is provided that Milwaukee should inspect the laying of water pipe and all work done in connection with the distribution of the water to consumers. The city engineer was likewise to approve all material entering into the waterworks system in West Allis.

By the second paragraph it was provided that the waterworks system installed by West Allis should become the property of Milwaukee,—

"whenever, and at such times as the said village of West Allis or any part thereof in which said water system or any part of said water system and equipment shall be located, shall be annexed to or in any manner become a part of said city of Milwaukee, and without any compensation to the village of West Allis, Wisconsin."

By the third paragraph West Allis was required to obey all rules and regulations that might be made by the board of public works of the city of Milwaukee for the construction and operation of the plant. West Allis was to assume all liability for damage growing out of the construction or operation of the plant.

By the fourth paragraph the city of Milwaukee agreed to deliver water to West Allis at a designated point, being a

point on the boundary line of the city of Milwaukee. This clause contained the further provision:

"And said party of the first part shall then have the right to shut off water and discontinue the supply thereof to the said party of the second part, whenever in the judgment of the city engineer of said party of the first part the best interests of said city of Milwaukee require it." (This part of the contract was considered in *West Allis v. Milwaukee*, 180 Wis. 512, 193 N. W. 360.)

By the fifth paragraph West Allis agreed to pay Milwaukee the sum of six cents per hundred cubic feet, payment to be secured by a $10,000 bond.

By the sixth paragraph it was agreed that West Allis should have the right of resale and distribution of the water supplied to it.

The trial court was of the view that the parties contemplated annexation or consolidation of the village of West Allis with the city of Milwaukee some time in the future, and the provisions of sec. 66.02, Stats., relating to annexation of the territory, are part of the contract; if either city desired this condition, the contract was terminated; if consolidation was consummated, that terminated the agreement; that sec. 66.02 is a part of the contract and is a condition precedent to the termination of the contract, and it terminates the contract if the cities are consolidated, or if the electors of both or either of said cities refuse to ratify the ordinance for consolidation.

The trial court evidently imported sec. 66.02 into the contract for the reason that it was a part of the law of the land and therefore a part of every contract. It is very doubtful whether that principle of law has any application to the facts of this case, and, if it does have, there is nothing in the contract which makes it obligatory upon either of the parties to it to proceed in conformity with it, and any consideration based upon the proposition that sec. 66.02 is part of the contract may be disregarded.

The contract itself gives evidence of the fact that the parties to it anticipated that at some future time the village (now city) of West Allis might be annexed to the city of Milwaukee. The fact that such consideration appears to have been prominently in the minds of the contracting parties, and that they deliberately failed to incorporate a clause fixing the term of service accordingly, is certainly support to the inference that they withheld such a provision intentionally rather than overlooked the fact that no definite term was prescribed. The situation of the parties was such and the circumstances so compelling that it may well have been considered unnecessary to fix a definite time. We have explored the contract, and can find no provision therein of a contractual nature upon which can be based a determination that the contract was for any specified term. Enlargement of contracts by inference, especially inferences to be drawn a third of a century after the making of the contract, is fraught with a good many dangers. The court cannot now, because of the situation of the parties and the large public interest involved, make a new contract to meet the new situation. It is a well-established principle of law that, where no definite term is fixed and the contract is indefinite in that regard, either party may terminate it upon a reasonable notice. 4 Page, Contracts, § 2098. See *Irish v. Dean,* 39 Wis. 562.

The question then arises, Was the notice given by the city of Milwaukee for the termination of this contract reasonable? The city of Milwaukee on January 7, 1927, served notice that pursuant to the resolution of the common council hereinbefore referred to, it terminated the contract as of the 1st day of January, 1930. It is considered that this notice fixed a reasonable time for the termination of the contract. Counsel for West Allis contends that the notice is unreasonable,— first, because West Allis is dependent upon the city of Milwaukee for its supply of water; that securing of another supply involves difficult problems; that funds were not available; and that the financial condition of the city of West Allis

was such from 1927 to 1930 that it could not borrow money. Reasonable notice can hardly be made to depend upon the financial situation of the other party to the contract. Counsel cites no case so holding and we find none. Upon that theory all that West Allis would be obliged to do to make the contract perpetual would be to keep itself in debt. It is therefore considered and held that the contract was one for an indefinite time and was terminated by a proper notice as of January 1, 1930.

The next matter for consideration is the right of the city of Milwaukee to recover an amount in excess of the contract rate which has been paid. This contention is based upon the proposition that the railroad commission in its order of 1926 prescribed the following rate for water furnished for any purpose beyond the city limits: "There shall be a uniform charge of ten cents per one hundred cubic feet, equal to $13\frac{1}{3}$ cents per one thousand gallons." This rate was subsequently, as hereinbefore stated, reduced to nine cents per hundred cubic feet.

A consideration of the record and particularly the order of 1929 makes it certain beyond question that this rate was not intended to apply to consumers being furnished under contracts. As to the contract rates, the railroad commission at all times deemed itself without jurisdiction to revise such rates. To now hold that a rate fixed for ordinary consumers who were permitted to connect with the city waterworks system and so take water beyond the city limits should now be applied to contracts prescribing a different rate, seems absurd under the circumstances. See rates considered in *Pabst Corp. v. Railroad Comm.* 199 Wis. 536, 227 N. W. 18. The city has been paid the contract rate. The contract having been terminated as of January 1, 1930, it did not fix the rights of the parties as to transactions had after its termination. If the city in a proper action can establish that the service rendered by it upon the basis of *quantum meruit* was worth more than the amount which it has received, it will be entitled to recover

accordingly unless precluded on other grounds. Whether or not it is entitled to recover and the amount of recovery are judicial questions. There is no provision in the public utility law for refunds corresponding to sec. 195.37, which by its terms applies to freight charges, which was dealt with in *Chicago & N. W. R. Co. v. Railroad Comm.* 156 Wis. 47, 145 N. W. 216, 974. In a public utility case the railroad commission appears to have no power to find reasonable value for services already rendered. Its jurisdiction is to fix rates, service, etc., to be followed in the future. Sec. 196.37.

The water plant of the city of Milwaukee is a public utility. *Pabst Corp. v. Milwaukee,* 190 Wis. 349, 208 N. W. 493. As such, under the public utility law, it was and is required to render adequate service. It has not refused to perform its statutory duty. Therefore the injunction in *West Allis v. Milwaukee* was improvidently granted. What it did refuse to do was to continue to perform the contract. In the absence of a schedule covering the service rendered to parties situated as is West Allis, it is the duty of the water department of the city of Milwaukee to file its schedule covering the service with the railroad commission (now public service commission), whereupon the reasonableness of the rate so fixed, if in dispute, may be determined in proceedings had pursuant to the public utility law. This will cover service to be rendered in the future. The contract being at an end, the city of Milwaukee could not of course proceed under the terms of the contract to terminate the service. While it is freed from the contract, it is subject to the law, and under the law it must continue to render service in accordance with the law. The only matter open to investigation will be the charge for the service to be rendered, which shall be determined as already indicated. This disposes of all of the questions necessary to a termination of this long drawn out controversy.

In *Milwaukee v. West Allis,* there being no proof that the reasonable value of the service rendered after January 1,

1930, was in excess of six cents per hundred cubic feet, and the plaintiff not being entitled to recover in accordance with the rate established for ordinary consumers, the trial court properly dismissed the plaintiff's complaint.

*By the Court.*—In the case of *Milwaukee v. West Allis,* the judgment appealed from is affirmed. In the case of *West Allis v. Milwaukee,* the judgment appealed from is reversed, and cause remanded with directions to dismiss the complaint for want of equity.

The following memorandum was filed April 2, 1935:

PER CURIAM (*on motion for rehearing*). Motion for rehearing has been made in this case or, in the event that is denied, it is requested that the mandate be amended; the contention of the city of West Allis being that, if the mandate is not amended and the judgment is affirmed, it is *res adjudicata* on the right of the city of Milwaukee to recover in excess of six cents for the water furnished after the termination of the contract.

The mandate must stand. The city sued, claiming that it was entitled to ten cents under the order of the railroad commission. The city of West Allis defended on the ground that the water was furnished under the contract. No other issue was presented by the pleadings. While there was a scintilla of evidence of reasonable value, the question of reasonable value of the service rendered was not in fact litigated. The question of reasonable value of services rendered after the termination of the contract was by the opinion of the court held to be an open question, and subject to further litigation if the parties be so advised. Affirming the judgment on the ground that the city was not entitled to the schedule rate does not preclude the city from claiming and recovering the reasonable value of the services rendered which were not furnished under the contract.

Motion denied without costs.