TRUSTEES OF UNIVERSITY CO-OPERATIVE COMPANY,
Respondent, vs. CITY OF MADISON, Appellant.

*November 7—December 5, 1939.*

*Harold E. Hanson,* city attorney, for the appellant.

For the respondent there was a brief by *Bagley, Spohn, Ross & Stevens,* and oral argument by *Frank A. Ross* and *Gilbert McDonald,* all of Madison.

NELSON, J.   On July 30, 1926, the plaintiff, as lessee, and the Regents of the University of Wisconsin, as lessor, entered

into a thirty-year lease of a certain building located at the northwest corner of State and Lake streets in the city of Madison. The building is a one-story structure, having a frontage of sixty feet on State street and one hundred feet on Lake street. The comparatively flat roof of the building is drained by an 8-inch iron pipe which in 1925 was connected with a 20-inch tile storm drain which was constructed by the city in 1893, and ran along the westerly side of Lake street at the curb line. The 1893 storm drain ran to the north in a straight line from State street, across Langdon street and to Lake Mendota, a distance of about two blocks. In 1910, the city constructed in Lake street a 2x3 feet concrete drain. It ran parallel with the tile drain mentioned and about seventeen inches to the east thereof. Both drains existed in 1925 when the building was constructed. In 1934, the city replaced the concrete drain just mentioned with a 3x6 concrete storm drain. It occupied the same space that had theretofore been occupied by the 1910 drain. The 1934 storm drain ran in a straight course from State street until it reached a point about one hundred feet from Lake Mendota where it turned slightly to the west and departed from a straight course, a distance of about four feet. Before reaching Lake Mendota, its dimensions were increased to 3x12 feet. Neither the plaintiff nor its subtenants experienced any water troubles until after the summer of 1934. After that time, water seeped into the plaintiff's basement after every heavy rain. In the spring of 1935, the plaintiff's janitor, pursuant to a request of the plaintiff's manager, called the street department of the city regarding the water in the basement. Employees of the department visited the building and concluded that the water was probably entering the basement through cracks in the sidewalk on Lake street. Nothing, however, was done about the matter until another heavy rain had occurred. The street department was again called and thereafter the cracks in the sidewalk were tarred by that depart-

ment. On August 6, 1935, between 12:25 and 5 a. m., a rainfall of 3.18 inches occurred. As a result of that rainfall water accumulated on the plaintiff's roof to a depth of about ten inches at the roof drain. The depth of the water was sufficiently high to reach above the flashings at the skylights, and as a consequence water ran down into the building. At that time the plaintiff occupied a part of the premises and Baron Brothers, C. W. Anderes Company, and Wisconsin Typewriter Company occupied other spaces. As a result of the water dripping into the building, the building was damaged, requiring plastering and repainting in part, and the merchandise stocks of the plaintiff and its three subtenants were damaged. On August 7, 1935, the street was opened at the point where the plaintiff's drain was connected to the 1893 drain. It was found that the tile elbow which connected the plaintiff's iron drain to the storm drain was broken and filled with leaves, twigs, gravel, and dirt, and that the storm drain into which it emptied was somewhat crushed and was badly clogged with dirt and debris. Neither the tile elbow nor the storm drain was in a functioning condition and obviously caused the water to back up and accumulate on the plaintiff's roof. The plaintiff assumed that it was obligated, under its leases, to pay the damages sustained by its subtenants. The plaintiff paid for the building repairs and also the damages claimed to have been sustained by its subtenants except those sustained by C. W. Anderes Company. As to those damages, the plaintiff agreed to pay them but at the time of the trial had not done so. The several subtenants orally assigned their claims to the plaintiff. The plaintiff filed a claim against the city which included the damages sustained by it, as well as those sustained by its subtenants.

The trial court, apparently, was of the view that a finding of negligence on the part of the city might be grounded upon certain evidence adduced by the plaintiff which tended to show

that the city had in 1925 connected plaintiff's drainpipe with the 1893 storm drain instead of with the newer 1910 storm drain. Much evidence was adduced by the parties relevant to that issue. The jury found, in substance, that the city had made the connection, that it was negligent in so doing, and that such negligence was a cause of the plaintiff's damages. The city contends that there is no evidence to support the finding that the city made the connection, and that in any event it was not negligent in so doing. Whether the evidence adduced by the plaintiff was sufficient to prove that the city made the connection, we deem it unnecessary to decide for the reason that that connection made in 1925, under the situation that then existed, did not cause the plaintiff's damages. The 20-inch drain at that time was undoubtedly an efficient drain. While it was deemed insufficient by the city to take care of the surface waters which accumulated at the corner of State and Lake streets, it was clearly adequate at that time to take care of all waters which came from the plaintiff's drainpipe. It continued to function until after the summer of 1934 when the plaintiff first experienced trouble with water in its basement. In our view, negligence cannot be grounded upon the fact that the plaintiff's drain was connected with the 1893 drain in 1925.

The jury further found that the city was negligent with reference to destroying a portion of the 1893 drain between Langdon street and Lake Mendota at the time of laying the 1934 drain, and that such negligence was a cause of the plaintiff's damages. The city contends that as to that issue there was no substantial evidence adduced justifying the submission of that issue to the jury. With that contention we cannot agree. It will be remembered that the 1893 drain ran in a straight line to Lake Mendota; that its location was about at the curb line; that the 1910 storm drain also ran in a straight line to Lake Mendota and was located about seventeen inches east of the tile drain; and that the 1934

storm drain followed the course of the 1910 drain until it reached a point about one hundred feet from Lake Mendota where it swung to the west a distance of about four feet. It is thus apparent that the 1934 drain crossed the line of the 1893 drain before reaching Lake Mendota. Mr. Pankow, one of the contractors who constructed the 1934 drain, testified that he did not recall any tile sewer; that there was a concrete sewer that had been replaced; that the 1934 stormwater sewer swung over to the west side of the street, and that if there was any sewer there they had to dig through it. Mr. Harrington, the city engineer, testified that the 1934 storm drain swung to the west at a point a little over one hundred feet from the lake; that the swing was about four feet; that the 1934 sewer was widened to a dimension of twelve feet before reaching Lake Mendota, and that the 1934 sewer either passed under or over or through the old tile sewer, if the latter was there. Maps made by the city engineer were produced which showed the locations of the several storm drains. There is, in our opinion, ample evidence to support the jury's finding that the defendant destroyed a portion of the 1893 storm drain when it laid the 1934 storm drain.

The jury further found that the defendant was negligent with reference to failing to act with reasonable promptness to remedy the defect in the storm drain after having actual or constructive knowledge that it had become out of repair. The defendant contends that the evidence does not support that finding. In our opinion, that contention is not sound. The plaintiff's building was constructed in 1925. A building permit was undoubtedly issued by the city after the plans and specifications for the building had been submitted to it. The plans showed the kind of roof that was to be constructed and the manner of disposing of the rain water which would fall upon it. The city building inspector doubtless performed his

duty and inspected the building while it was in process of construction. The city concededly connected the building with a sanitary sewer. When the city replaced the 1910 storm drain with the 1934 storm drain, it should have discovered that the plaintiff's building was not connected with the 1910 storm drain and must have known that the building was not connected with the 1934 storm drain. When it constructed the 1934 drain it must have known, or should have known, that in constructing it the 1893 tile drain was partly destroyed or damaged to such an extent that it could no longer effectively function as a storm drain. After the summer of 1934, the city knew of the water which accumulated in the plaintiff's basement after each heavy rain. Officers or employees of the defendant came upon the premises for the purpose of investigating what caused the water to accumulate there. The employees sent to investigate that matter thought that the trouble was caused by water seeping through cracks in the sidewalk. Nothing, however, was done to remedy the condition until after another heavy rain when water again accumulated in the plaintiff's basement. Upon being advised as to that situation, the city then tarred the cracks in the sidewalk and let the matter go at that. Sometime thereafter, the August 6th storm occurred with its resultant damage. We think it clear that the city had knowledge of sufficient facts to justify the finding of the jury that the city had constructive knowledge that the storm drain to which the plaintiff's drainpipe was connected, was defective and out of repair.

Since the material ultimate facts found by the jury are supported by the evidence, the all-important question is whether those facts spell liability on the part of the city. The city contends that in constructing and maintaining storm drains it acts in a governmental capacity, and therefore, under the established law of this state, it is not liable for the negligence

of its officers and employees. *Erickson v. West Salem,* 205 Wis. 107, 236 N. W. 579, is cited as supporting that contention. It was there said (p. 109) :

"That parks, playgrounds, drains, ditches, *and sewers* are established, constructed, and maintained by municipalities acting solely in the performance of governmental functions seems so clear as not to admit of reasonable controversy."

That statement was much broader than the established law of this state justified, if the word "sewers" be taken to mean and to include all sanitary sewers and all so-called storm sewers. The court, speaking through the writer of this opinion, inadvertently included the word "sewers" because of the fact that the drain involved in that action was referred to by the attorneys on that appeal as a sewer. That drain, properly speaking, was not in any true sense a sewer. No sewage or water other than that from the open ditch entered it. The drain was in a park and constituted a park improvement. At the time *Erickson v. West Salem, supra,* was decided, there were a number of carefully considered cases in our Reports in which the law applicable to sanitary and storm sewers and the liability for negligently constructed or maintained sanitary and storm sewers had been fully stated. *Hart v. Neillsville,* 125 Wis. 546, 104 N. W. 699; *Hart v. Neillsville,* 141 Wis. 3, 123 N. W. 125; *Geuder, Paeschke & Frey Co. v. Milwaukee,* 147 Wis. 491, 133 N. W. 835. None of those cases was referred to in the opinion and no member of this court considered that those cases were being impliedly overruled. In the *Geuder Case,* the most recent case in which the law applicable to defective or inadequate sewers was considered, the law was summarized thus (p. 504) :

"This must be remembered: (1) A municipality is not responsible for mistakes in a duly adopted plan of sewage. (2) A municipality is responsible for a defective original construction of a system of sewage, as said in the authorities already cited, but that means negligent execution of the plan,

not defective original construction inhering in the plan itself. Proper construction according to the adopted plan can never be a defective original construction, within the rule mentioned. (3) If a duly adopted and executed plan of sewage does not prove defective in operation while in a proper state of repair, but becomes out of repair to the knowledge, actual or constructive, of the municipality, the duty devolves upon it to remedy the matter, and it is liable for failure to exercise ordinary care in respect thereto."

The sewer involved in that case served both as a sanitary and a storm sewer. We perceive no reason why the law there stated is not applicable to a storm sewer to which a private building is and has the right to be connected. It is our opinion, therefore, that under the law as stated in our cases, the city became liable when it negligently failed within a reasonable time to remedy a defect actually or constructively known by it to exist.

In addition to the negligent failure of the city to remedy the defect, there is the negligent act of the city in destroying in part the 1893 tile drain in 1934 without ascertaining whether the plaintiff's building was connected to it. This, in our opinion, presented a clear case of active negligence and clearly amounted to an invasion of private rights. That act also was found by the jury to be a cause of the plaintiff's damages. The latter finding is so obviously sound that little need be said about it. When the city destroyed a part of the 1893 drain at a point within one hundred feet from Lake Mendota, the drain was rendered so defective that it could no longer function effectively as a storm drain. The part of the drain between the plaintiff's connection and the point of destruction could not efficiently drain and complete stoppage because of the accumulation of dirt, leaves, etc., was ultimately inevitable. The water which thereafter flowed into it could escape only by the slow process of seepage. When the August 6th storm occurred, the defective drain just did not function.

The city next contends that the court erred in refusing to submit to the jury a question which would have permitted the jury to find whether the storm of August 6th was an extraordinary rainfall. Under the law, a city is not liable for damage resulting from the failure of a sewer or storm drain to function when a storm is an extraordinary one. *Allen v. Chippewa Falls,* 52 Wis. 430, 9 N. W. 284; *Hopkins v. Rush River,* 70 Wis. 10, 34 N. W. 909, 35 N. W. 939; *Geuder, Paeschke & Frey Co. v. Milwaukee, supra.* In our opinion, the trial court was right in concluding that such a question was of no materiality. The rainfall obviously was a heavy one, 3.18 inches, in four hours and thirty-five minutes. During one of those hours there was a rainfall of 1.22 inches. Had the storm drain not been defective, the plaintiff's 8-inch pipe would undoubtedly have disposed of all of the water which fell upon the roof. The plaintiff's pipe had effectively functioned during five other storms between 1925 and 1935 when the amount of rain that fell exceeded 1.22 inches an hour and during three like storms that occurred after 1935, two of which were heavier than the August 6th storm. After 1935, the plaintiff's drainpipe was connected to the 1934 storm drain.

The defendant further contends that the damages which the jury found were originally sustained by the subtenants, C. W. Anderes Company and Baron Brothers, were not proven. As to the damages originally sustained by C. W. Anderes Company, we think the contention is without merit. Mr. Anderes, who was connected with that company, was produced and testified that when the water came down into the store it damaged some of the company's merchandise. He exhibited an inventory of the merchandise that was damaged which was prepared by him at or shortly after the flood occurred. No attempt was made by the city, in cross-examining Mr. Anderes, to question the correctness of the several items of damage.

As to the damages actually sustained by Baron Brothers, we are of the opinion that the amount of those damages as found by the jury was not proven by either satisfactory or competent evidence. A letter from Baron Brothers to the plaintiff was received in evidence which simply said:

"This is in reply to yours regarding our loss sustained at the Co-op during the recent flood. Our total loss of merchandise amounted to $405.83. The merchandise is at the Co-op, held for your inspection."

That statement was hearsay and not competent proof of the amount of damages sustained by Baron Brothers. The only other testimony relating to the amount of damages originally sustained by Baron Brothers was that of Mr. Rothschild, its manager. He testified that as a result of the water overflowing the roof in 1935, Baron Brothers' merchandise was damaged; that Baron Brothers made claim against the "Co-op" for the sum of $405.83, which was the correct amount of the damage; that a detailed statement was made at that time under the direction of the head of the department, but that he did not have that statement with him. On cross-examination he testified that he did not have a detailed statement or inventory of the loss. The head of the department, referred to by Mr. Rothschild, under whose direction a detailed statement of damages had been prepared, was not produced. Mr. Rothschild's testimony as to damages was clearly hearsay and did not constitute proof of the amount of the damages to a reasonable certainty. A very similar situation existed in the case of *Geuder, Paeschke & Frey Co. v. Milwaukee, supra,* and nothing can be added to the full discussion there to be found (pp. 496, 497).

The defendant finally contends that the claim filed by the plaintiff against the city did not comply with sec. 62.12 (8) (a), Stats., which in part provides:

"All claims and demands against the city *shall be itemized,* verified by the oath of the claimant."

The amount of the claim presented was $1,080.09. The claim was itemized as follows:

| | |
|---|---:|
| Repair plaster by John Ahl & Co. | $ 77.00 |
| Repaint damaged walls and ceiling by Padgham Painting Co. | 165.00 |
| Pump water from roof, City Water Dept. | 5.00 |
| Damage to Co-op stock | 258.31 |
| Damage to Baron Brothers | 405.83 |
| Damage to typewriters (Wisc. T. Co.) | 25.00 |
| Damage to C. W. Anderes Co. stock | 143.95 |
| | $1,080.09 |

The claim as filed fully informed the city as to the nature and amount of the claim. The evidence tended to show that at the time the plaintiff filed its claim against the city its sub-tenants had orally assigned their original claims for damages to the plaintiff. In *Hanrahan v. Janesville,* 137 Wis. 1, 118 N. W. 194; *Moyer v. Oshkosh,* 151 Wis. 586, 139 N. W. 378, it was held that no great amount of formality is required as to the form in which claims should be presented to a city, and that claims presented to cities should not be narrowly construed. The purpose of requiring a claimant to present his claim to a city before bringing action is to give the latter an opportunity to pay or adjust it, without unnecessary expense, if it deems the claim valid. In our opinion, that purpose was fully subserved by the claim filed.

Other contentions are made by the city. We have given careful consideration to them and have concluded that they are without merit.

*By the Court.*—The judgment is affirmed as to all damages except those originally sustained by Baron Brothers. The judgment, in so far as it includes damages originally sustained by Baron Brothers, is reversed and cause remanded with directions to grant a new trial solely upon the question of damages originally sustained by Baron Brothers.