## DUEL v. NATIONAL SURETY CORPORATION.

### Civ. A. No. 1235.

District Court, E. D. Wisconsin.

Sept. 28, 1945.

Frank T. Boesel, of Milwaukee, Wis., for plaintiff.

Miller, Mack & Fairchild and J. G. Hardgrove, all of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

As liquidator of Mid-Continent Mutual Insurance Company (hereinafter referred to as the insurance company), the plaintiff seeks to recover from the defendant the full amount of its $10,000 fidelity bond given to insure the insurance company against loss through larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, willful misapplication or other fraudulent or dishonest acts of individual employees.

Plaintiff bases his right to recover on a variety of alleged acts on the part of Elmer H. Kambe, Carl M. Kindt, and Milton J. Maxon as employees of the insurance company. As the result of the trial, issues in that connection have been narrowed to those relating to the alleged conversion by Kambe of the whole or part of approximately $20,000, representing net premiums on insurance written by the insurance company from February to June 17, 1942.

The bond was issued February 19, 1940, and was kept in force by renewals. It was issued without the formality of any previous application although two applications were made shortly thereafter. The first, by Kambe, was made March 2, 1940, and was received by the defendant on March 14 according to its receipt stamp thereon. The second application followed on March 29. This was jointly made by the insurance company and State Insurance Underwriters, Inc., and was received the same day by the defendant. No explanation has been given for the fact that the issue of the bond antedated the applications. As no fidelity bond had been previously in force, the issue of the bond accordingly was undoubtedly made in order to accommodate the then requirements of the insurance company, which were extremely urgent in character. At that 'time proceedings brought by the plaintiff for the liquidation of the insurance company were pending against it in the Circuit Court of Milwaukee County. The parties had stipulated for a dismissal thereof provided that on or before February 19, 1940, not less than $3,500 would be contributed to the insurance company's surplus, and that the bond in suit be furnished. The requirement of the

See, also, 4 F.R.D. 336.

$3,500 contribution to surplus was satisfied and the proceedings were formally dismissed on February 23, 1940. The minutes of the meeting of the insurance company's directors held February 19, 1940, read as follows:

"* * * The Chairman announced that the subject for discussion and action related to the requirement of the Insurance Department of Wisconsin and the Circuit Court of Milwaukee County, that the sum of $3500.00 be contributed to the surplus of this Company and that the General Agent, Elmer H. Kambe, be placed under contract and bond on or before February 19, 1940. * * *

* * * * * *

"Mr. Kambe appeared before the Directors and approved the terms and conditions of a contract relating to his representations of this Company as exclusive general agent. The contract was duly executed in the presence of all of the Directors and they upon motion duly made, seconded and unanimously carried, approved the same.

"Mr. Maxon presented for the approval of the Directors, Bond No. 336967 executed by the National Surety Corporation of New York, entitled primary commercial blanket bond, and covering specifically all employees and officers of the company, including Mr. Kambe. * * *

"On motion duly made and seconded, it was resolved that said bond be unanimously approved. The Secretary was then instructed to prepare a copy of the minutes of this meeting for the purpose of filing the same with the Hon. Walter Schinz, Circuit Judge, as evidence of compliance with the order of the Court and the stipulation of the parties relating thereto."

The bond and its rider show that the defendant was aware not only of the existence of the insurance company but of State Insurance Underwriters, Inc., as well and that it knew of the identification of Kambe with these corporations, and that Kambe, as agent, among others, was to be covered. From the fact that the bond was issued without any previous written application and coincidentally with the zero hour for meeting requirements to prevent further action in the liquidation proceedings then pending, it is considered that the defendant then possessed sufficient knowledge of the facts to be aware of the purposes of and requirements for the bond and of the attending time limit for its issue, execution and delivery.

The bond covered any loss of money belonging to the insurance company, not exceeding $10,000, sustained through larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, willful misapplication, or other fraudulent or dishonest act or acts of certain employees of the insurance company, acting directly or in collusion with others and discovered before the expiration of a year from cancellation of the bond as an entirety, whichever should happen first. The bond defines "employee" or "employees" as one or more natural persons (except directors who are not also officers) who during the effective period of the bond were in the regular service of the insurance company in the ordinary course of its business and who were compensated by salary, wages, or commission and the performance of whose services were subject at all times to the insurance company's control and direction. The bond required that the insurance company notify the defendant within fifteen days after discovery of any fraudulent or dishonest act on the part of any covered employee, and file itemized and duly sworn to affirmative proof of loss with the defendant within four months after discovery of such act, and, at the defendant's request, produce and permit it to examine by its representatives all pertinent books, documents and records. The bond provided further that suit thereunder shall not be brought before the expiration of two months from the filing of proof of loss or after fifteen months from the discovery of the loss. Under a rider attached to the bond and forming part of it, the coverage of the bond was extended to State Insurance Underwriters, Inc., a Wisconsin corporation, as an employer. The latter corporation (previously referred to above) will hereinafter be designated as Underwriters.

The insurance company was organized under Wisconsin laws as a mutual insurance corporation and was licensed to write automobile insurance on September 19, 1939; it engaged in such business at Milwaukee from that time until June 17, 1942, except for a short period in February, 1940, when, as pointed out, liquidation proceedings had been brought by the plaintiff and were pending against it. Its business career terminated June 17, 1942. At that time the plaintiff in his official capacity took possession of it under Secs. 200.08 and 200.09, Wis.Stats., and thereafter instituted proceedings for its liquidation in the Cir-

964

cuit Court of Milwaukee County. In these proceedings on July 14, 1942, the court entered an order declaring the insurance company to be insolvent and ordered that its affairs be liquidated by the plaintiff. In addition, such order vested the plaintiff with the title to all of the insurance company's property, contracts, claims, choses in action and assets of every nature and description and authorized him to collect all moneys, claims and demands due it. The plaintiff accordingly seeks to vindicate alleged rights of the insurance company under the bond.

These alleged rights, in view of the issue remaining in the action, relate to the accountability of Kambe for premiums claimed to have been received and converted by him from February to June, 1942, both inclusive. Kambe's liability exists, it is claimed, because of his disregard of obligations under his written general agency contract with the insurance company dated February 17, 1940, which was two days before the issuance and execution of the bond in suit. While this agency contract was approved by the directors of the insurance company on February 19, 1940, together with the bond in suit, it appears that Kambe's identification with the insurance company went back to its organization period. He along with fourteen others was an incorporator, as shown by its articles of organization filed November 3, 1938. At its organization meeting held December 16, 1938, he was elected a director and president. He held these offices until March 17, 1939, when he resigned. On October 20, 1939, the directors voted that a general agency with him be authorized. At that time he was neither an officer nor director. No written contract pursuant to such authorization was drafted or executed, but it is not questioned that he functioned in that capacity on the basis outlined in the minutes until the contract dated February 17, 1940, was executed. At that time he was neither an officer nor a director of the insurance company. This contract operated to completely displace any previous agency contract between Kambe and the insurance company. Under the new and formal contract, Kambe was appointed the insurance company's sole and exclusive agent in Wisconsin; he had full power, subject to the insurance company's refusal and rejection, to receive and accept applications for insurance risks written by it; he also had "full power and authority to write policies and to collect, receive and receipt for premiums," deliver, renew, countersign or cancel policies and to make customary endorsements, changes in assignments, transfers and modifications thereof according to authorization of the insurance company; and he had power and authority to designate persons, firms and corporations as sub-agents and to delegate to them "such powers and rights or any of them with which said Agent (Kambe) is hereby specifically vested."

The contract contained further provisions as follows:

"(4) All premiums received by the Agent shall be held in a fiduciary capacity for the Company until delivered to it, less such commissions thereon as may be due to the Agent, as hereinafter provided; that remittances on all policies shall be made promptly after receipt of the premiums as provided in said policies and in no event shall policies remain unpaid after sixty (60) days from the last day of the month of issuance of each respective policy.

\* \* \* \* \* \*

"(5) It is further agreed by and between the parties hereto that any order of a court of competent jurisdiction finding either of the parties hereto insolvent, shall immediately, and at the option of the other party, without notice, automatically terminate this contract."

"(8) The Company shall pay the Agent as commissions for business done by the Agent, on premiums received by the Company arising out of the applications and/or policies actually received by the Agent and accepted by the Company, of 35% on all classes of risks. On premiums paid direct to the Company the commission shall be promptly paid to the Agent unless the Agent is maintaining a past due balance due the Company.

\* \* \* \* \* \*

"(9) The Agent agrees to furnish a bond of $5,000.00 issued by a surety company authorized to transact business in the State of Wisconsin in order to guarantee the faithful performance of the terms of this contract as respects premiums which may be due to the Company or return premiums in the possession of the Agent.

"(10) It is understood and agreed that the Company shall pay in addition to the commissions as set forth herein for rent and other expenses incidental to the conduct of this business, $50.00 a month until

April 1, 1940, at which time it shall be increased to $100.00 a month. It is further understood that the Company shall bear no further expenses in the operation of its business excepting claims, legal and accounting services of public accountants.

"It is further understood and agreed that this contract may be terminated by either party upon sixty days notice in writing to the other party. In the event that the Agent is indebted to the Company at the time of such termination, the amount of the indebtedness shall become due and payable within sixty days of such termination."

On October 1, 1940, Kambe executed at the foot of his copy of the contract the following instrument:

"I hereby assign all my rights, title and interest in the aforesaid contract to the State Insurance Underwriters, Incorporated. Dated this first day of October, 1940, at Milwaukee, Wisconsin.

(Signed) Elmer H. Kambe"

Underwriters, which was incorporated under Wisconsin laws on March 23, 1932, at the time of the assignment was no stranger to the insurance company. It was controlled by Kambe. Its character and identity was fully known to the latter since its office was in the same quarters with Kambe's, as was the case of the insurance company during the period of its business career. Despite the fact that Kambe was nominally the agent, all premium receipts were deposited in Underwriters' bank account; on its books were recorded all transactions with relation to the agency. It was merely, although a corporate entity, an instrumentality of Kambe's, completely controlled, dominated and operated by him.

Kambe's copy of the agency contract, with the assignment indicated, was inserted in Underwriters' corporate minutes of its directors' meeting held October 1, 1940. The assignment was obviously part of a transaction between Kambe and Carl M. Kindt. The assignment being made, Kindt paid into Underwriters $5,000 for a fifty percent stock interest, issued to himself and wife. As shown by the minutes, their transaction also included an agreement that the salaries of Kambe and Kindt "shall always be equal." At that time Kambe and wife were, and Kindt and wife became, Underwriters' directors; and while Kambe continued as president and treasurer, Kindt was elected vice-president and secretary. Incidentally, at the same time, Underwriters' new board of directors authorized

a cash payment to the insurance company of $2,500 against its note for that amount, payable out of surplus.

Shortly after the assignment Kindt became officially identified with the insurance company. On October 20, 1940, he was elected director and also president, which offices he continued to hold thereafter.

Kambe, on the other hand, who had not been either an officer or a director of the insurance company since March 17, 1939, did not become such until on March 17, 1941, when the insurance company's directors, voting to increase the board's membership to seven, elected Kambe a director and also secretary, both of which positions he has since held.

From the time of the assignment of the agency contract to Underwriters, its affairs were apparently jointly managed by Kambe and Kindt. Their stock interests were equal; the directorships were held by Kambe and wife and by Kindt and wife, and they shared the offices on the basis indicated. From that time forward, but while it was no longer a wholly owned and controlled Kambe corporation, it continued to function with respect to the insurance company as it had previously. As before the assignment, all premiums, whether payable to the insurance company or otherwise, went into its bank account, and just as theretofore, remittances to the insurance company were made by it and on its books all transactions were recorded relating to agency matters under the insurance company's contract with Kambe.

The assignment, as such, appears never to have been considered or acted upon one way or another by the insurance company.

On June 17, 1942, when the plaintiff took possession of the insurance company, there was in excess of $20,000 of net premiums due it, all of which had been collected and had gone into Underwriters' bank account. The period during which this delinquency had accumulated began in February and ended on June 17, 1942.

On June 19, 1942, the following letter, written at the direction of one of the plaintiff's assistants, was received by the defendant:

"June 18, 1942

National Surety Corporation
735 N. Water Street
Milwaukee, Wisconsin
Gentlemen:

This is (to) confirm our conversation with your Mr. Walsh this morning that the Mid-

Continent Mutual Insurance Company has discontinued business by orders of the Insurance Department of the State of Wisconsin who have taken over its assets and liabilities as of this date.

Under your bond we are notifying you that there are accounts collected and not paid to the company amounting to about $5,000.00. An audit which has not as yet been made will disclose the exact amount.

The Insurance Premium Finance Company whose president is Milton J. Maxon who also acted as treasurer for the Mid-Continent Mutual Insurance Company, owes this company a sum not as yet determined, of about $3,500.00.

> Yours very truly,
> Mid-Continent Mutual Insurance Co.
> (Signed)   Elmer H. Kambe
> Elmer H. Kambe, Secretary"

On June 27, 1942, the plaintiff wrote the defendant, stating, among other things, "This is to advise you that our audit reveals a total shortage of $15,472.99." For this amount the plaintiff filed a sworn proof of claim dated September 11, 1942, which was received by the defendant the following day. This proof of claim included a further amount of $13,840.72 which is no longer at issue.

■■ Defendant contends that any conversion of the insurance company's premiums resulted from acts on the part of Underwriters and that such acts were outside the coverage of the bond. True it is that during the entire period of the insurance company's business life, Underwriters collected and deposited the premiums, but Underwriters was in fact Kambe. He completely dominated and controlled it. He had Underwriters do his bidding although he and not Underwriters was the agent under contract with the insurance company. Underwriters functioned solely as Kambe's instrumentality and under the circumstances, as a matter of law, Underwriters' acts were the acts of Kambe.

The Supreme Court of Wisconsin has consistently held to the rule expressed in Milwaukee Toy Co. v. Industrial Commission, 203 Wis. 493, 234 N.W. 748, 749, as follows: "* * * By legal fiction the corporation is a separate entity and is treated as such under all ordinary circumstances. Circumstances occasionally arise where it appears that a person is 'simply dealing with his own property through a corporate agency as absolutely as he might deal with it as an individual,' as in Haynes v. Kenosha E. R. Co., 139 Wis. 227, 239, 119 N.W. 568, 571, 121 N.W. 124. If in such case applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim, the fiction is disregarded and the transaction is considered as one of the individual himself or of the corporation, whichever will prevent the inequitable result. Haynes v. Kenosha E. R. Co., supra; Fernekes v. Nugent Sanitarium, 158 Wis. 671, 149 N.W. 393; Wolf Co. v. Kutch, 147 Wis. 209, 132 N.W. 981; Webb v. Mason, 152 Wis. 19, 139 N.W. 442; Koenig v. [George] Logemann & Sons Co., 170 Wis. 619, 176 N.W. 58. Thus one cannot escape personal criminal liability through the corporate fiction. Milbrath v. State, 138 Wis. 354, 120 N.W. 252, 131 Am.St.Rep. 1012. * * *" To the same effect: Minahan v. Timm, 210 Wis. 689, 693, 247 N.W. 321; In re Norcor Manufacturing Co., 7 Cir., 109 F.2d 407, 411; Taylor v. Standard Gas & Electric Co., 306 U.S. 307, 618, 59 S.Ct. 543, 83 L.Ed. 669.

■ Defendant argues that this doctrine has no application here by reason of the assignment of the agency contract by Kambe to Underwriters. However there is no evidence that the insurance company consented to the assignment. Even though Underwriters had knowledge of the attempted assignment, it was not effective to discharge Kambe and to make Underwriters the agent of the insurance company in his place since Sec. 209.04(6), Wis.Stats. provides: "No corporation shall be licensed as agent of any insurance company * * *." Under Wisconsin law only a natural person may be legally licensed. Therefore the assignment was without effect, and from a standpoint of individual responsibility Kambe remained liable as agent. The defendant bonded Kambe in that capacity.

■ The plaintiff correctly maintains that failure to remit premiums under the agency contract being established, such failure, aside from all other considerations, constituted acts on the part of Kambe for which the defendant is liable under the bond. Such failure is dishonest action. Citizens' Trust & Guaranty Co. v. Globe & Rutgers Fire Insurance Co., 4 Cir., 229 F. 326, Ann.Cas.1917C, 416; National Surety Co. v. McCutcheon, Tex.Civ.App., 270 S.W. 1062; Fidelity & Deposit Co. of Maryland v. People's Bank of Sanford, 4 Cir., 72

F.2d 932; American Surety Co. v. Pauly, 170 U.S. 160, 162, 18 S.Ct. 563, 42 L.Ed. 987. Such failure is also fraudulent action. Magee v. Manhattan Life Insurance Co., 92 U.S. 93, 23 L.Ed. 699. In addition such failure is embezzlement. United American Fire Insurance Co. v. American Bonding Co., 146 Wis. 573, 131 N.W. 994, 40 L.R.A.,N.S., 661; Aetna Life Insurance Co. v. Mabbett, 18 Wis. 667; Wells v. Collins, 74 Wis. 341, 43 N.W. 160, 5 L.R.A. 531; Black v. Whitewater Commercial & Savings Bank, 188 Wis. 24, 205 N.W. 404; Illinois Surety Co. v. Donaldson, etc., 202 Ala. 183, 79 So. 667.

The situation here is somewhat different than the ordinary case involving a fidelity bond. Kambe sat on both sides of the table. Underwriters in fact managed the insurance company—Underwriters was Kambe. Nevertheless Underwriters was entitled to only 35% of the premiums collected. By the contract the balance of the premiums was held in a fiduciary capacity until delivered to the insurance company. Of course the policyholders had a great interest in having 65% of the premiums collected and turned over to the insurance company. The commissioner of insurance, representing the public including the policyholders, insisted as a condition of permitting the insurance company to continue in business that a cash contribution to surplus be made, and that a bond be executed. The defendant was paid for providing the bond in question. The insurance company did not obtain the 65% of the premiums to which it was entitled and which were held for it in a fiduciary capacity. Under the rule set forth in cases heretofore cited, such failure to remit premiums was dishonest and fraudulent and comes within the terms of the bond.

■ Books and records of the insurance company and of Underwriters were received in evidence without objection. Computations were made therefrom by two of plaintiff's assistants who qualified as accountants. As the books themselves were competent, the computations of the accountants were properly received. Phillips v. United States, 8 Cir., 1912, 201 F. 259, 265; United States v. Feinberg, 2 Cir., 1944, 140 F.2d 592, 595. These computations established a loss by the insurance company by reason of collected and unremitted net premiums under the Kambe agency contract substantially in excess of the full amount of the bond. Unless, therefore, no recovery can be awarded by reason of failure to comply with conditions precedent in the bond, the plaintiff is entitled to judgment.

■ Several contentions are advanced by the defendant to the effect that recovery is barred for failure to observe conditions set forth in the bond. Of these, one asserts that the proof establishes that prior to the issue of the bond Kambe was guilty of fraudulent and dishonest acts in the service of the insurance company. It is said that recovery is precluded under the following provision of the bond: "Section B. 1. No Employee, to the best of the knowledge of the Insured, or, if the Insured be a copartnership, of any partner thereof, or, if the Insured be a corporation, of any officer thereof not in collusion with such Employee, has committed any fraudulent or dishonest act in any position in the service of the Insured or otherwise."

There is no evidence that Kambe committed "any fraudulent or dishonest act." The matters referred to by the defendant in supporting its argument involve merely charges or rumors of charges as contrasted with acts actually committed. The provision of the bond, therefore, has no application.

■ Recovery, the defendant further contends, cannot be allowed because the bond automatically canceled itself under the following provisions: "Section A. 8. This bond shall be deemed cancelled as to any Employee: (a) immediately upon discovery by the Insured, or, if the Insured be a copartnership, by any partner thereof, or, if the Insured be a corporation, by any officer thereof not in collusion with such Employee, of any fraudulent or dishonest act on the part of such Employee; * * *." This provision has no application. No cancellation was effected thereby because, as the evidence shows, every other officer and employee of the insurance company, with respect to Kambe's acts, was in collusion with him.

■ The defendant also asserts that no recovery can be awarded since the following condition of the bond has not been observed by or on behalf of the insurance company: "Section B. 2. The Insured shall notify the Underwriter by telegram or registered letter addressed and sent to it at its home office in the City of New York, N. Y., of *any fraudulent or dishonest act* on the part of any Employee *at the earliest*

*practicable moment, and at all events not later than fifteen days* after discovery thereof by the Insured, or, if the Insured be a copartnership, by any partner thereof, or, if the Insured be a corporation, by any officer thereof not in collusion with such Employee." (Italics supplied.) Under this provision of the bond the notification of loss given to the defendant by the insurance company under date of June 18, 1942, and the further notification given by the plaintiff on June 27, 1942, were sufficient and timely; any previous notice, due to the existence of collusion as above indicated, was not due to be forthcoming.

■ The defendant finally contends that no recovery is permissible owing to the alleged failure to comply with the following condition of the bond: "Section B. 3. Within four months after discovery of any fraudulent or dishonest act as aforesaid, the Insured shall file with the Underwriter *affirmative proof of loss, itemized* and duly sworn to, and shall, if requested by the Underwriter, produce from time to time, for examination by its representatives, all books documents and records pertaining to such loss." (Italics supplied.) In this connection the evidence shows that on August 11, 1942, the plaintiff filed with the defendant a sworn statement of loss naming Kambe, Maxon and Kindt as the employees, by reason of whose acts, between 1940 and June 17, 1942, claim was made as follows:

policyholders and agents." In Trustees of University Co-Operative Company v. City of Madison, 233 Wis. 100, 288 N.W. 742, the court construed Sec. 62.12(8) (a), Wis. Stats. which provides: "All claims and demands against the city *shall be itemized,* verified by the oath of the claimant." (Italics supplied.) It will be noted that this statutory language is the equivalent of the language in question employed in the bond. In the cited case the plaintiff filed a proof of claim without date, consisting of several general items aggregating a total of $1,080.09. The court held the proof of claim filed with the city was sufficient.

The claim as filed by the plaintiff was, therefore, a sufficient compliance with the bond. In it the nature and amount of the claim were stated, and it was stated in such manner as to serve the purpose of giving the defendant an opportunity to pay or adjust it without further expense if it deemed such action warranted. The contention made by the defendant in this connection is overruled. Incidentally, it should be mentioned that under elementary law a construction of the bond and all its provisions is required in favor of the plaintiff and against the defendant. So holding, it becomes unnecessary to consider the plaintiff's contention that, in any event, the defendant waived compliance with the condition in question by reason of denial of liability.

| "Date | Description of Item | Debit | Credit |
|---|---|---|---|
| Various | Funds of Mid-Continent Mutual Insurance Company consisting of cash collected from policyholders and agents | $15,472.99 | |
| Various | Funds wrongfully abstracted and wilfully misapplied | 13,840.72 | |

\* \* , \* \* \*

Net Loss: $29,313.71"

The question arises whether this sworn statement of loss constitutes a sufficient itemized proof of loss under the bond with respect to the first item, the second item being no longer at issue. The item as stated definitely asserts a loss of a given amount during a specific period due to the nonpayment of the insurance company's funds "constituting cash collected from

Examination of other contentions made by the defendant has been carefully made. They cannot be sustained.

Judgment as prayed for in the plaintiff's complaint will be entered upon approval of findings of fact and conclusions of law in conformity herewith, to be submitted by the plaintiff.