VILLAGE OF BUTLER, Plaintiff and Respondent, v. RENNER
   MANUFACTURING COMPANY, Defendant and Appel-
   lant: AMERICAN CONCRETE PIPE COMPANY, Defend-
   ant.

*No. 94 (1974). Argued September 8, 1975.—Decided September
   30, 1975.*
(Also reported in 233 N. W. 2d 380.)

For the appellant there were briefs by *James D. Wing* and *Whyte, Hirschboeck, Minahan, Harding & Harland, S. C.,* and oral argument by *James W. Mohr, Jr.,* all of Milwaukee.

For the respondent there was a brief and oral argument by *John P. Buckley* of Waukesha.

DAY, J. The first question is whether or not a contract for sewer service by the village to a nonresident, the Renner Manufacturing Company, establishing charges for such sewer service but providing no termination date was void from the beginning. We conclude that it was not. The second question is may the contract be terminated by the village, and we conclude that it may be upon reasonable notice.

On April 4, 1954, the village of Butler and the predecessor of Renner Manufacturing Company, Renner Building Corporation, located in the city of Milwaukee, contracted to connect up with the village sewer system for the payment of a fixed connection charge and a user fee of $8 per employee per annum payable quarterly with a yearly minimum of $33. Paragraph four of the agreement provided for a reduction in the charges if the village should charge other nonresident industrial users less. Paragraph five provided:

"5. This agreement shall continue in full force and effect so long as the party of the second part shall continue the proposed sanitary sewer connection to the Village of Butler, provided, however, that if the indus-

trial site owned by the second party should be annexed to the Village of Butler this agreement shall terminate."

The parties operated under this agreement until March 3, 1970, when the village amended its sewer service ordinance and provided for a change in rates for outside users and for the installation of meters in the user's water system to measure the flow into the sewer system for purposes of determining the charge.

Under date of October 22, 1971, the village sent a notice to Renner advising that the municipal code provided for a charge of 80 cents per one thousand gallons of metered water with a meter to be installed on the waterline at the owner's expense for sewer charges, and that the village would allow a user to install a meter for the purpose of metering water which is used for cooling or other purposes where such water is discharged into the storm sewer, and allow a deduction in rates for such discharged water. Renner was further notified, ". . . you are in violation of the above-quoted sections of the municipal code . . . ." The notice then stated that they were ordered to comply with the ordinance by the 22d day of November, 1971, by installing a meter upon the premises in compliance with the municipal code. Renner refused to install the meter or pay the charges requested on the theory that it had a binding contract with the municipality for sewer service. The village then brought an action in the circuit court for declaratory judgment claiming that the contract was void *ab initio*. The village asked for declaratory judgment (a) that the contract between the village and Renner was invalid insofar as it purported to establish a permanent charge based on so much per employee per year and that the village may modify the contract so as to impose "an equitable charge based upon water consumption of [Renner]," and further asking (b) that the ordinance of March 3, 1970, establishing a sewer charge for resident and nonresident users of the sewer

service of the village be declared valid and applicable to Renner.

The judgment in the case which was entered on November 19, 1973, adjudged that the contract between the village and Renner was invalid and unenforceable against the village insofar as it purported to establish a permanent charge for sewer service based on the number of Renner's employees per year, and that the ordinance of March 3, 1970, establishing a sewer service charge for nonresident users is valid and enforceable against Renner except as it may establish an unreasonable or unreasonably discriminatory rate and that the jurisdiction on such question was vested in the public service commission pursuant to sec. 66.076 (9), Stats.[1] In a decision by the trial court of August 21, 1973, the court concluded that the operation of the sewer system was a "governmental function" rather than "proprietary," and that the agreement between the parties was therefore unenforceable.

The parties seemed to agree that if this was a "governmental function" as distinguished from a "proprietary function," the agreement between the parties was unenforceable. The village maintains that the operation of

---

[1] "(9) Upon complaint to the public service commission by any user of the service that rates, rules and practices are unreasonable or unjustly discriminatory, or upon complaint of a holder of a mortgage bond or mortgage certificate or other evidence of debt, secured by a mortgage on the sewerage system or any part thereof or pledge of the income of sewerage service charges, that rates are inadequate, the public service commission shall investigate said complaint, and if sufficient cause therefor appears shall set the matter for a public hearing upon 10 days' notice to the complainant and the town, village or city. After such hearing, if the public service commission shall determine that the rates, rules or practices complained of are unreasonable or unjustly discriminatory, it shall determine and by order fix reasonable rates, rules and practices and shall make such other order respecting such complaint as may be just and reasonable. The proceedings herein shall be governed, as far as applicable, by the provisions of sections 196.26 to 196.405."

the sewer system is a governmental function. Renner contends that it is a proprietary one, that the contract, once entered into, can only be terminated by mutual consent, and that, therefore, the village has no authority unilaterally to change the sewer rates. The contract between the parties has no termination date either as to the service or as to the period in which the rate is to remain in effect.

We are unable to find any cases in Wisconsin holding that when a municipal sewer system extends sewer service to one outside the municipality to whom it owes no obligation to extend such service, that it is engaging in a "governmental" as contrasted to a "proprietary" function.

In *Erickson v. West Salem* (1931), 205 Wis. 107, 109, 236 N. W. 579, this court stated that sewers are maintained by municipalities in the performance of governmental functions. However, that language as applied to sewers was later stated to be too broad if it was taken to mean and include all sanitary sewers and so-called storm sewers. *Trustees of University Co-operative Co. v. Madison* (1939), 233 Wis. 100, 108, 288 N. W. 742.

In the case of *Hasslinger v. Hartland* (1940), 234 Wis. 201, 208, 290 N. W. 647, this court held that the operation of a sewage plant was a governmental function but held that the municipality was not thereby exempted from liability for maintenance of a nuisance by one outside the municipality. As the court said at page 208, ". . . because the nuisance alleged in this case does not arise from the negligent acts of the village officials, and, . . . because, while the village is discharging a governmental function in maintaining a sewage disposal system, its relation to these plaintiffs in this case is that of one proprietor to another . . . ."

For the purpose of this opinion, we conclude that the contract between the village and Renner was done as a proprietary function of the village. This would not neces-

sarily be true were the contract with a member of the village where the relationship of governed and governor would exist. In the case of *Tronslin v. Sonora* (1956), 144 Cal. App. 2d 735, 737, 301 Pac. 2d 891, the city of Sonora had agreed to provide sewer services to a nonresident free of charge in exchange for an easement across his land. Later the city sought to charge a user fee, and the user brought action to enforce his contract. In that case the court said:

". . . Although the installation of the sewage system was quite obviously an exercise of the police power of the defendant city for the public health and welfare of its residents, that is not to say that it was a like proceeding for the benefit of those persons residing outside of its corporate limits. Paraphrasing what we said in *Hobby v. City of Sonora*, 142 Cal. App. 2d 457, [298 P. 2d 578], neither plaintiffs nor all other residents of Tuolumne County constitute a class amenable to any ordinance passed by the Sonora City Council. The defendant city could no more compel plaintiff here, as a resident of the county, to connect with the sewer than could plaintiff compel the city to extend its lines into county territory and allow county residents to connect therewith. The system is wholly owned by one political subdivision, the city of Sonora; the plaintiff is a resident of another, the county of Tuolumne. The right-of-way across plaintiff's land could only have been acquired in one of two ways—either by condemnation or by contract. In the present case it may have been that the city, in lieu of condemnation of the property of plaintiff and payment to him of the damages which necessarily would have flowed therefrom, or for one of many other reasons, decided in its discretion to escape what might have been a long and costly proceeding and to accomplish the same purpose by an agreement, i.e., that for the right to possess and use a way across plaintiff's land for the construction and maintenance of its sewer, it would give to plaintiff the right to connect with and to use the sewer. Its act in so doing could in no sense be said to have been an invalid exercise of its power to contract. [2] And having entered into a valid contract, it could not, by ordinance, impair the same. *(City of Los Angeles v. Los Angeles City Water Co.*, 61 Cal. 65.)"

We conclude that this case is governed by this court's holding in *Milwaukee v. West Allis* (1935), 217 Wis. 614, 258 N. W. 851, 259 N. W. 724. In that case, on October 18, 1905, the city of Milwaukee entered into a written contract with the then village of West Allis, later city of West Allis, wherein West Allis agreed to buy water from Milwaukee at 6 cents per hundred cubic feet. There were provisions relating to the laying of pipe and compliance by West Allis with all the rules and regulations of the city with respect to its water system. The contract further provided that the water works system installed by West Allis should become the property of Milwaukee:

". . . whenever, and at such times as the said village of West Allis or any part thereof in which said water system or any part of said water system and equipment shall be located, shall be annexed to or in any manner become a part of said city of Milwaukee, and without any compensation to the village of West Allis, Wisconsin." (p. 616)

On October 25, 1926, the common council of the city of Milwaukee adopted a resolution by which it declared the contract to be terminated as of January 1, 1930. West Allis claimed that Milwaukee was without power to terminate the contract, which it stated was intended by its terms to continue until West Allis should become part of Milwaukee by annexation. It was Milwaukee's contention that no term of service was fixed by the contract and it might therefore terminate upon reasonable notice. Our court said at pages 618, 619:

". . . We have explored the contract, and can find no provision therein of a contractual nature upon which can be based a determination that the contract was for any specified term. Enlargement of contracts by inference, especially inferences to be drawn a third of a century after the making of the contract, is fraught with a good many dangers. The court cannot now, because of the situation of the parties and the large public

interest involved, make a new contract to meet the new situation. It is a well-established principle of law that, where no definite term is fixed and the contract is indefinite in that regard, either party may terminate it upon a reasonable notice. 4 Page, Contracts, sec. 2098. *See Irish v. Dean*, 39 Wis. 562.

"The question then arises, Was the notice given by the city of Milwaukee for the termination of this contract reasonable? . . . It is considered that this notice fixed a reasonable time for the termination of the contract. . . . It is therefore considered and held that the contract was one for an indefinite time and was terminated by a proper notice as of January 1, 1930."

We conclude that the village of Butler, for the reasons given in the *Milwaukee v. West Allis Case, supra,* may terminate as it did here those provisions of the contract providing for the sewage charge as contained in the original contract and that it may do so upon reasonable notice. What constitutes reasonable notice is a fact determination that can best be made by the trial court in this case and additional evidence on this issue may be taken by the trial court in its discretion. Once having determined what is a reasonable period for the termination of the contract, then the provisions of the ordinance setting the sewage rates subject to appeal to the public service commission by the user is the proper procedure to be followed here.

We conclude therefore that the village of Butler did have authority to make a contract with Renner setting sewage rates and that under the facts in this case those rates, having no definite termination date, were subject to termination by the village upon reasonable notice.

That portion of the judgment finding the contract void *ab initio* is reversed. That part of the judgment holding that the ordinance of March 3, 1970, establishing a sewer service charge for nonresident users of the sewer service for the village is valid and enforceable against the defendant, except insofar as it may establish

an unreasonable or unnecessary discriminatory rate, is affirmed, subject to the trial court's finding as to when a reasonable notice would make it effective.

*By the Court.*—Judgment affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.

HEFFERNAN, J. *(concurring).* I agree with the decisional point in the majority opinion that, " 'where no definite term is fixed and the contract is indefinite in that regard, either party may terminate it upon a reasonable notice.' "

I disagree with the dicta that seems to indicate that whether a contract is void or valid depends upon whether the municipality acts in a proprietary or governmental function. This is incorrect. A contract of a proprietary nature may be invalid, and a contract in the exercise of a governmental function may be valid. The question is not governmental versus proprietary. Rather, the question is whether the execution of a contract was within the express or necessarily implied powers of the municipality in the exercise of the general charter law or the home rule amendment.

When a municipal government seeks to perform a proprietary contract, the question is whether that contract is reasonably necessary to carry out the purposes of the municipality. It seems clear that no municipality can contract to perform functions of a private proprietary nature or invest its funds in risk enterprises merely because the contract is proprietary in nature. The test of a proprietary contract is whether it is for a public purpose and reasonably necessary to implement the purpose of the governmental unit and the general welfare of its citizens. *Kiel v. Frank Shoe Mfg. Co.* (1944), 245 Wis. 292, 14 N. W. 2d 164.

A contract involving the governmental function is valid and enforceable if it is within the express powers

of a municipality, or within the powers necessarily implied, to carry out its governmental function. So, too, under sec. 66.30 (2), Stats., municipalities may contract for the receipt or furnishing of services or the joint exercise of any power or duty required or authorized by statute. It seems apparent that the subject matter which can be contracted for clearly embraces matters within the governmental function. A municipal government may also contract to pay future bond interest and may bind its successors and require them to levy taxes in the future—certainly a governmental function. They may do so, however, because they are specifically authorized to so act by a legislative delegation of power.

There is no prohibition against contracting to perform, or to have performed, a governmental function. The prohibition is against the ultra vires exercise of governmental function.

Thus, the nature of the power to be exercised is not the criterion, but whether the municipality has the power, by legislation or otherwise, to exercise extra-territorial governmental functions. This is a matter of statutory and common-law interpretation.

There is, however, an additional caveat which must be observed where a contract affects a governmental function. If the contract, without specific legislative authority, abrogates or bargains away the "sovereign" powers of the municipality or binds the hands of a future governmental legislative body so it cannot exercise governmental powers in the future, the contract is ultra vires and void.

This concurrence attempts to point out that the touchstone of the validity of a municipal contract is not to be measured solely by whether it is proprietary or governmental. Contracts executed in either capacity may be valid or void, depending upon the scope of delegated or implied powers pertinent to the particular facts. A

contract otherwise valid, whether entered into in a governmental or proprietary capacity, may be terminated under the standards of *Milwaukee v. West Allis* (1935), 217 Wis. 614, 258 N. W. 851, 259 N. W. 724, but such termination may be effected whether the contract is proprietary or governmental.

Those cases discussing the invalidity of municipal contracts in respect to governmental function carefully explain that it is not the contracting for a limited time of a governmental function that results in invalidity, but the abrogation of sovereign responsibility—the bargaining away of the future right to govern. *See: West Bend v. West Bend Heating & Lighting Co.* (1925), 186 Wis. 184, 189, 202 N. W. 350, which carefully pointed out this distinction.

We have only recently dispensed with that monster of illogic that plagued litigants and lawyers for generations—the doctrine of governmental tort immunity based on a spurious distinction between governmental and proprietary functions.

The cases cited in the majority opinion to demonstrate that there is a difference between governmental and proprietary functions arise out of the now outmoded tort immunity distinctions. They ought to have no relevance in contract cases in the initial determination of whether a municipal contract is valid. They have not had heretofore, and I regret the retrogression in jurisprudence that the majority opinion suggests. The question in all municipal contract cases is the same: Is the subject matter within the contract power (public purpose, power implied or expressed) of the municipality—and if within that power was it exercised in such a manner as to preserve and not unduly bargain away the municipality's "sovereignty" as conferred by the constitution or the legislature.

It is my hope that the dicta of the majority will not be interpreted as a holding that the nature of a municipal contract, proprietary vis-a-vis governmental, is in itself determinative of a contract's validity. This was an assumption, not argued on this appeal, by the parties to the litigation. This court would be derelict in its duty if it were to accept erroneous legal assumptions of litigants. Parties cannot stipulate that their case shall be governed by bad law.

The majority disposes of the litigation here on sound principles of contract law. There is no reason, in addition, to rationalize the decision on the unsupported assumptions of the litigants.

I am authorized to state that Mr. Chief Justice WILKIE joins in this concurrence.