KENOSHA COUNTY COURT HOUSE LOCAL 990, Plaintiff and Appellant, v. KENOSHA COUNTY, Defendant and Respondent: STATE DEPARTMENT OF PUBLIC WELFARE, Intervenor and Respondent.

*February 4—March 1, 1966.*

For the appellant there was a brief by *Lawton & Cates* and *David Loeffler,* all of Madison, and oral argument by *Mr. Loeffler.*

For the respondent Kenosha County there was a brief by *Joseph Salituro,* corporation counsel, and *John M. Keefe,* assistant corporation counsel, and oral argument by *Burton A. Scott* of Kenosha.

For the respondent State Department of Public Welfare the cause was argued by *Beatrice Lampert,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

GORDON, J. This case requires us to construe the statutes to determine whether a county board of supervisors is empowered to alter the wages of the employees of a county welfare department. Construction is required because the statutes do not expressly resolve the issue.

The trial court concluded that the legislature had granted this power to the county board of public welfare, and we agree with that determination. The provisions of sec. 46.22 (3), Stats., direct that the county director of public welfare "shall recommend to the county board of public welfare the appointment and fixing of salaries of employees necessary to administer the functions of the department . . . ."

This quoted expression on the part of the legislature falls slightly short of a flat declaration that the county board of public welfare is empowered to fix the salaries of its employees. However, it is persuasive in view of the absence of a more direct or precise expression on the part of the legislature. In *Roschen v. Ward* (1929), 279 U. S. 337, 339, 49 Sup. Ct. 336, 73 L. Ed. 722, Mr. Justice HOLMES observed that "there is no canon against using common sense in construing laws as saying what they obviously mean."

The determination of the trial court is further buttressed by the language of sec. 59.15 (2) (c), Stats., which relates to the general authority of the county board of supervisors to fix the compensation of county employees. The latter section provides in part as follows:

". . . no action of the board [of county supervisors] shall be contrary to or in derogation of the rules and regulations of the state department of public welfare pursuant to s. 49.50 (2) to (5). . . ."

The aforesaid language supports the respondents' assertion that it was the legislature's intention to place control of the compensation of county welfare workers in the hands of the public welfare department so as to facilitate the maintenance of a statewide program of public welfare, as well as to insure a centralization of administration in order to procure and retain federal financial grants.

We share the following viewpoint expressed by the trial judge:

"When sec. 59.15 and sec. 46.22 are read together it seems evident that the authority and duty to determine wages and functions of employees has been vested by the legislature in the County Department of Public Welfare and not in the County Board of Supervisors."

This position is also buttressed by two formal opinions of the attorney general. In 1955, in 44 Op. Atty. Gen. 262, 266, the attorney general ruled that sec. 59.15, Stats., did not give the county board of supervisors authority to control the appointment of employees in a county welfare department. Subsequently, in 1957, the attorney general expressed an opinion in 46 Op. Atty. Gen. 137 which asserted that a county board of supervisors does not have the power to fix compensation of employees of a county department of public welfare.

We acknowledge the cogency of the appellant's argument that the county board of supervisors is the "re-

sponsible political decision maker," whereas the county board of public welfare is an administrative board chosen by the county board of supervisors. It is true that the county board of supervisors as a legislative body directly responsible to the electorate has broad powers. The appellant points out that the county board of public welfare is under the general budgetary control of the county board of supervisors and that the members of the county board of public welfare are chosen by the county board of supervisors. Nevertheless, these facts would not bar the legislature from having adopted a format under which the determination of wages of the employees of the subordinate board could be made only by the latter board.

In his "Life of Johnson," Boswell attributes the following to Samuel Johnson:

"Laws are formed by the manners and exigencies of particular times, and it is but accidental that they last longer than their causes."

Although the reasons for the legislative arrangement in the case at bar may not be controlling, we nevertheless deem persuasive the respondents' argument that the granting of wage prerogatives to the county board of public welfare was part of an overall plan to coordinate the administration of welfare aids. The state is obliged to meet certain standards in regard to federally supported welfare programs. While such programs are administered on a county basis, they are subject to a statewide plan of which federal approval is required.

Even though county welfare boards receive a portion of their funds as a result of the action of the supervisors of the various counties, we conclude that it was the legislative plan to place the wage policies as to the counties' public welfare workers within the power of the county boards of public welfare in order to accomplish a statewide program which could more readily be coordinated with the requirements of the federal government.

*By the Court.*—Order affirmed.