JAMES L. BARTELLS, District Attorney, Lafayette County
You ask my opinion on two questions, which you state in the following manner:
 "Does the authority to establish salaries for the staff employed by the 51.42/51.437 boards lie with the County Board of Supervisors or the county's 51.42/51.437 board? Also, would the previous question be influenced by the fact that a 51.42/51.437 board had not previously exceeded its state limit and thus the county had been reimbursed 100% for 51.42/51.437 board expenditures?"
By way of background for such questions, you state:
 "The facts giving rise to this question are: The Lafayette County 51.42/51.437 board adopted salary raises for staff employees in addition and subsequent to raises approved by the County Board in its annual budget. The salary raises have not been approved by the County Board. In Lafayette County, the 51.42/51.437 board has not exceeded State funding limits and, therefore, the county has been reimbursed 100% for its 51.42/51.437 budget. The proposed salary raises would cause the 51.42/51.437 board to exceed its county budget, but not state funding limits and would, therefore, be 100% reimbursable."
In my opinion, the authority to set salaries of 51.42/51.437 board personnel is vested in the 51.42/51.437 board, but any salary increases authorized must be limited to those funds budgeted and approved by the county board.
Section 59.15 (2) and (4), Stats., grants county boards broad powers as to establishment of employe positions, number of personnel, amount of compensation and employment regulations. However, sec. 51.42 (5) (h) 5., Stats., specifically confers on the community mental health, mental retardation, alcoholism and drug abuse governing and policy-making board of directors (hereinafter "the 51.42 board") the power to "Fix the salaries" of personnel employed to administer the program defined in sec.51.42 (2) (a), Stats. Likewise, sec. 51.437 (6) (a), Stats., confers on a community developmental disabilities services board (hereinafter *Page 107 
"the 51.437 board") the power to "establish salaries" for the community developmental disabilities service program. In this instance, therefore, the power of the county board set forth in sec. 59.15 (2) and (4), Stats., to fix the salary or compensation of county employes, is, to some extent, limited by the express language in secs. 51.42 (5) (h) 5. and 51.437 (6) (a), Stats. However, such limitation does not negate the general budgetary control of the county board.
Although sec. 51.42 (5) (h) 5., Stats., does authorize a 51.42 board to "Fix the salaries of personnel employed to administer the program," the preface to subsec. (5) emphasizes that such power is subject to the provisions of the balance of the section. One such provision is sec. 51.42 (3) (b), Stats., which reads as follows:
 "(3) (b) The county board or boards of supervisors shall review and approve the overall plan, program and budgets proposed by the [51.42] board." (Emphasis added.)
Section 51.437 (1) (a), Stats., provides that county boards have the primary governmental responsibility for the development, approval and continuing modification of a county plan for the delivery of services to developmentally disabled citizens. Section 51.437 (4) (b), Stats., sets forth the statutory basis for the creation of a so-called 51.42/51.437 board:
 "(4) (b) In counties having population of less than 500,000, county boards may designate the community mental health, mental retardation, alcoholism and drug abuse board established under s. 51.42 as the community developmental disabilities board."
The 51.42/51.437 board involved here is essentially a 51.42 board, with additional 51.437 board responsibilities. Thus, board personnel will act in such dual capacities.
The mere fact that the 51.42 board takes on 51.437 responsibilities does not obviate the fact that salary increases authorized under sec. 51.42 (5), Stats., are, by virtue of sec.54.42 (3) (b), Stats., limited to those funds budgeted and approved by the county board(s). There is nothing necessarily inconsistent in placing such specific direct salary control in the 51.42/51.437 board while at the same time placing general budgetary control (indirect salary control) in the county board. See Kenosha County Court House Local v. Kenosha County (1966),30 Wis.2d 279, 283, 140 N.W.2d 277. *Page 108 
In responding to your inquiry, I do not consider the fact that the 51.42/51.437 board has not exceeded state funding limits to be a controlling factor. Admittedly, requirements attached to the receipt of state grants-in-aid could to some extent affect the local salary structure of such board. See secs. 51.42 (8), (10) and (12) and 51.437 (8), Stats. However, I do not identify anything from the facts presented here which indicates that any requirement or pressure to raise salaries has been imposed on the local board by the state under these provisions.
BCL:JCM