ANTHONY S. EARL, Secretary Department of Natural Resources
You have requested my opinion on several matters which relate to the capacity of a joint sewerage commission under Wisconsin law to meet federal requirements for the discharge of pollutants from a publicly owned treatment work (POTW). Most of the requirements of concern have their analog in Wisconsin law. ch. 147, Stats.
Under this chapter the discharge of certain pollutants is prohibited. Discharge of those pollutants which are not expressly prohibited may be undertaken if the discharger first receives a Wisconsin Pollutant Discharge Elimination System (WPDES) permit. Thereafter, lawful discharge is conditioned upon compliance with the terms and conditions of the permit. In Wisconsin such a permit must be *Page 84 
approved by the United States Environmental Protection Agency (U.S. EPA); the U.S. EPA issues no permit of its own.
The fundamental working premise of the WPDES permit program is that some mode of technology will be employed to either eliminate the discharge altogether or to reduce by separate treatment those types of pollutants which are discharged. POTW's rely on wastewater treatment as their method of compliance.
The actual minimum level of treatment is expressed and enforced through effluent limitations which are required by federal and state law to be at least as stringent as the Clean Water Act Amendments of 1977 and the federal regulations adopted pursuant thereto.
Within these constraints a WPDES permittee, such as a POTW, which receives wastes from more than one source, is required to insure that one or more of the sources does not by the type or quantity of waste conveyed for treatment damage the treatment facility or impair the treatment process. These protective requirements are known collectively as pretreatment standards. Their enforcement depends initially on the POTW's ability to require the source to monitor the type and strength of the waste it conveys. This data is then used to determine, among other things, the charge back to each tributary source for wastewater treatment.
Regarding the enforceability of these related requirements by a joint sewerage commission, you ask:
 1. Is a joint sewerage commission formed under sec. 144.07, Stats., empowered to enact and enforce ordinances consistent with the mandates of the Clean Water Act Amendments of 1977 (P.L. 95-217) and the federal regulations adopted pursuant thereto, most particularly 40 C.F.R. 403, dealing with pretreatment requirements of permit holders?
 2. Is a joint sewerage commission empowered to enact and enforce ordinances consistent with the requirements of the Wisconsin Pollutant Discharge Elimination System (WPDES) permit program, specifically secs. 147.02 (4), 147.07 (2), 147.08 and 147.15, Stats'?
These two questions can be answered together. *Page 85 
I am of the opinion that joint sewerage commissions are empowered to enact and enforce regulations which would be required of them under the mandates of the Clean Water Act Amendments of 1977 (P.L. 95-217; hereinafter CWA), the federal regulations adopted pursuant thereto, and the parallel statutory and administrative law of Wisconsin. The bases upon which I have reached these conclusions are set forth below.
As a preliminary matter, it should be noted that state law empowers a multiplicity of units of local government to construct, operate and maintain sewage treatment systems. For those treatment systems which are themselves special units of local government and which go beyond the territorial limits of a single city, village or town, state law provides for the formation of a metropolitan sewerage district or a joint sewerage district. Secs. 66.067 and 144.07, Stats. Both types of districts are administered by a commission. The powers of the metropolitan commission are set forth in general terms in sec. 144.07, Stats., and in more detail in secs. 66.22 through 66.26, Stats. In the case of the joint commission the general powers are set forth in sec. 144.07 and, by reference, in sec. 62.11 (5). The relevant portions of sec. 144.07, Stats., provide:
 (4)(a) Any 2 or more governmental units, including cities, villages, town sanitary districts or town utility districts not wishing to proceed under sub. (2) may jointly construct, operate and maintain a joint sewerage system, inclusive of the necessary intercepting sewers and sewerage treatment works . . . .
. . . .
 (4) (c) The sewerage commissioners shall project, plan, construct and maintain . . . intercepting and other main sewers . . . [and] disposal works . . . . The sewerage commissioners may also project, plan, construct and maintain intercepting and other main sewers for the collection and disposal of storm water which shall be separate from the sanitary sewerage system. . . . The sewerage commissioners may employ and fix compensation . . . or do such other things as may be necessary for the due and proper execution of their duties . . . .
Under sec. 144.07 (4), Stats., these powers are to be exercised within the following bounds and in the following manner: *Page 86 
 (d) Such sewerage commission shall constitute a body corporate by the name of "(Insert name of governmental units or area) Sewerage Commission," by which in all proceedings it shall thereafter be known. It may purchase, take and hold real and personal property for its use and convey and dispose of the same. This grant of power shall be retroactive to September 13, 1935 for commissions formed prior to January 1, 1972. Except as provided in this subsection the sewerage commissioners shall have the power and proceed as a common council and board of public works in cities in carrying out the provisions of par. (c). All bond issues and appropriations made by said sewerage commission shall be subject to the approval of the governing bodies of the respective governmental units.
By reference to the common council, the Legislature has empowered a joint sewerage commission to function as follows:
 Powers. Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language.
Sec. 62.11 (5), Stats. In other words, where the commission has a duty to operate and maintain sewage treatment facilities, it has the power to act through regulation and to seek appropriate civil remedies.
Subsection 147.015 (2), Stats., provides that an owner or operator of a treatment facility may be a permittee.
As the operator of a sewerage treatment system, a joint commission is a discharger of pollutants and can serve as the permittee for a WPDES permit. As a permittee its obligations are numerous; they include: *Page 87 
 147.02 (4)(f) That, if the permit is for a discharge from a publicly owned treatment work, the permittee shall:
 1. Inform the department of any new introduction of pollutants into the treatment works under s. 147.14 (2);
 2. Require that any industrial user of such treatment work comply with the requirements of ss. 147.07 (2), 147.08 and 147.15.
The requirements of subpara. 147.02 (4)(f)2., Stats., encompass pretreatment, monitoring and user charges. These facets of 40 CFR 403 are, therefore, the obligations of a joint sewerage commission when it acts as the permittee for its waste treatment facilities. Thus, if the Legislature has empowered a joint sewerage commission to serve as a permittee and to act by regulation where its duties and obligations so require and has expressly made such matters a duty of a WPDES permittee, it follows that a joint sewerage commission has the power to carry out its duties with respect to monitoring, pretreatment and user charges.
You ask a third question as follows:
 Are joint sewerage commissions empowered to enact and enforce ordinances regulating the discharge of pollutants to their systems in order to meet federal grant requirements which may be different from federal discharge permit requirements?
(Emphasis in the original.)
This question requires some speculation on my part since no federal grant requirements which regulate the discharge of pollutants, but which are not also tied to the CWA or the federal regulations which were adopted pursuant thereto, have been brought to my attention. Nonetheless, it can be said that if such requirements are reasonably and directly tied to the construction, operation or maintenance of the joint sewerage system, that the commission has the power under sec. 144.07 (4) (c), Stats., to enact and enforce ordinances which regulate such discharges.
You ask a fourth question as follows:
 If authority exists allowing joint sewerage commissions to adopt regulatory ordinances, *Page 88 
 a) What procedure must a commission observe regarding the enactment of such ordinances?
 b) What is the geographical jurisdiction of a joint sewerage commission regarding the application and enforcement of such ordinances?
 c) What specific judicial means of enforcing such regulatory ordinances are available to joint sewerage commissions?
As indicated above a joint commission is directed by statute to proceed "as a common council and board of public works in cities," sec. 144.07 (4)(d), Stats. A board of public works in cities is "under the direction of the common council," sec.62.14, Stats. Thus, the paramount procedure is that of a common council; that procedure is outlined in sec. 62.11 (3), Stats.
The Legislature has apparently made the formation of a joint sewerage district available to any combination of consenting local governmental units. In this respect the statute reads as follows:
 144.07 (4)(a) Any 2 or more governmental units, including cities, villages, town sanitary districts or town utility districts not wishing to proceed under sub. (2) may jointly construct, operate and maintain a joint sewerage system, inclusive of the necessary intercepting sewers and sewerage treatment works . . . .
After formation of the joint sewerage district the commission has the authority to construct, operate and maintain the sewerage system. See sec. 144.07 (4)(c), (d) and (e), Stats. Since the permit requirements dealing with pretreatment or the various aspects of monitoring dischargers which are tributary to the system are clearly associated with the proper operation and maintenance of the sewerage system, a joint sewerage commission would be under the duty to legally bind and actively enforce these terms and conditions.
Within the geographical boundaries of the governmental units which established it, the commission may achieve these goals through properly adopted regulations.
Since a joint sewerage commission has been granted the power of a common council as to those matters which relate to construction, operation or maintenance of the sewerage system, it is empowered *Page 89 
within its boundaries to enforce its ordinances by "fine, imprisonment [upon failure to pay such a fine], confiscation and other necessary or convenient means." Sec. 62.11 (5), Stats. In other words, a joint sewerage commission could seek to levy a fine for past violations, terminate service for the future or pursue a number of other modes of judicial relief encompassed by the phrase, "civil remedy."
Despite the apparent breadth of the grant to joint sewerage commissions, the Legislature has withheld the right to seek judicial relief for a public nuisance. That right has been granted to the individual municipalities (including towns) and metropolitan sewerage commissions but not to joint sewerage commissions. See sec. 823.02, Stats.
While the commission is empowered to establish a site for the treatment facility outside of the district boundaries, I can find no statutory authority for the commission to exercise extraterritorial regulatory powers. Therefore, I am of the opinion that the jurisdiction of the commission to enact and enforce regulations for pretreatment, monitoring and user charges is limited to the boundaries of the government units which formed it.
Nonetheless, a joint sewerage commission could accept a contract to receive and treat discharges from a facility outside of its legal jurisdiction. Within the constraints of the laws of contract the commission could, however, act by regulation to affect the terms of such a contract. Village of Butler v. RennerManufacturing Co., 70 Wis.2d 1, 233 N.W.2d 380 (1975). Therefore, I am of the opinion that if the commission enters into a contract with an extraterritorial discharger it must include in the contract the pretreatment and monitoring requirements and the user charges which are required by federal and state law. The commission must also draft the contract with sufficient flexibility to assure that future requirements of federal and state law can, within the constraints of the laws of contracts, be incorporated. Failure to do so would conflict with the national and statewide legislative intent of the pollutant discharge elimination programs and jeopardize the certification of the WPDES permit program.
The commission could seek enforcement of the terms of the contract as it would any other contract the terms of which had not been complied with, including equitable relief. *Page 90 
Your fifth question reads as follows:
 In light of 30 Op. Atty. Gen. 468, does a joint sewerage commission have ". . .the legal . . . and financial capability to insure adequate construction of the treatment works" (Emphasis supplied) required of an applicant for a federal wastewater treatment grant under 40 CFR 35.925-5? (Emphasis in the original.)
The provision about which you inquire reads as follows:
Sec. 35.925 LIMITATIONS ON AWARD.
 Before awarding initial grant assistance for any project for a treatment works through a grant or grant amendment, the Regional Administration shall determine that all of the applicable requirements of sec. 35.920-3 have been met and shall further determine:
. . . .
5 FUNDING AND OTHER CAPABILITIES.
That the applicant has:
(a) Agreed to pay the non-Federal project costs, and
 (b) Has the legal, institutional, managerial, and financial capability to insure adequate construction, operation, and maintenance of the treatment works throughout the applicant's jurisdiction.
For the reasons given below, I am of the opinion that a joint sewerage commission has the financial capability to insure adequate construction of the treatment works only if the various governmental units which were involved in the establishment of the commission have approved in advance the funding necessary to achieve an adequate level of construction. This precondition is required by the plain language of sec. 144.07 (4)(d), (e), Stats., which reads in pertinent part:
 (d) Except as provided in this subsection the sewerage commissioners shall have the power and proceed as a common council and board of public works in cities in carrying out the provisions of par. (c). All bond issues and appropriations made *Page 91 
by said sewerage commission shall be subject to the approval of the governing bodies of the respective governmental units.
 (e) Each such governmental unit shall pay for its proportionate share of such sewerage system, including additions thereto, and also its proportionate share of all operation and maintenance costs as may be determined by the sewerage commission. Each governmental unit may borrow money and issue revenue or general obligation bonds therefor, for the acquisition, construction, erection, enlargement and extension of a joint sewage disposal plant or refuse or rubbish or solid waste disposal plant or system or any combination of plants provided under this section, and to purchase a site or sites for the same. Each governmental unit
may, if it so desires, proceed under s. 66.076 in financing its portion of the cost of the construction, operation and maintenance of the joint sewage disposal plant or plants provided for in this section, or system.
From the above language it is clear that the Legislature intended that the power of the purse for joint sewerage commissions remain in the hands of the local units of government and not be placed directly with the commission. This is in accord with 30 Op. Att'y Gen. 468 (1941). "The sewerage commission has no source of revenue except the amounts paid to it by the respective cities involved. It has no power to levy a tax of its own but must obtain its revenues through the action of the [governmental units which comprise it]." Id. at 468-469.
In 1972 the Legislature amended sec. 144.07, Stats., and created new secs. 66.22 to 66.26, Stats. See ch. 276, Laws of 1971. These changes expanded the number and type of local units of government which could participate in the formation of metropolitan sewerage districts. Even though the metropolitan sewerage districts have the power of the purse (see particularly sec. 66.25, Stats.), the Legislature did not amend the language of sec. 144.07 (4)(d), Stats., which applies to the issuing of bonds and the making of appropriations by joint sewerage commissions. It must, therefore, be assumed that it was not the intent of the Legislature to deviate from the past financial constraints it had placed on joint sewerage commissions. Such commissions must, therefore, operate within those constraints. This qualification on the powers of a joint sewerage commission does not, in my *Page 92 
opinion, affect its ability to demonstrate the financial capability required by 40 CFR 35.925-5.
BCL:RMR