CARROLL D. BESADNY, Secretary Department of Natural Resources
You ask whether the Oneida Indian Tribe is a "governmental unit" within the meaning of section 144.07(4)(a), Stats., and whether it may be included in a joint sewerage commission. In my opinion, a tribal government is not a "governmental unit" within the meaning of the statute. Consequently, for this reason alone and without deciding whether a tribe voluntarily could subject itself to the jurisdiction of a joint sewerage commission, it is my opinion that the Oneida Indian Tribe may not be included as a member of such a commission.
Although persuasive policy arguments could be made for including tribal governments within the definition of a "governmental unit," the Legislature probably did not have Indian Tribes in mind when it adopted that language in chapter 144. Subchapter II of chapter 144, entitled Water and Sewage, makes no reference to tribal government. Rather, this subchapter appears only to be concerned with governmental units such as towns, cities and villages that are created and organized under state statutes. Clearly, tribal governments are distinguishable. SeeWorcester v. The State of Georgia, 31 U.S. (6 Pet.) 515 (1832);United States v. Mazurie, 419 U.S. 544 (1975). The frequent references to the duties and responsibilities of each member governmental unit clearly indicate that chapter 144 includes only those governmental units that are subject to state legislative authority.
Oneida participation in a joint sewerage system seems to be a logical and effective method for the tribal government to cooperate with local units of government in the development and operation of an *Page 133 
effective regional sewage treatment program. Although tribal government status is conceptually analogous in many ways to the status of units of local government as that phrase is used under state law relating to joint commissions, it is sufficiently different in my opinion to require excluding tribal governments from the present definition of governmental unit under section 144.07.
As indicated in 68 Op. Att'y Gen. 83 (1979), state law empowers a number of different units of local government to construct, operate and maintain sewage treatment systems. For those treatment systems which are themselves special units of local government, and which go beyond the territorial limits of a single governmental unit, state law provides for the formation of a metropolitan sewerage district or a joint sewerage district. Secs. 66.067 and 144.07, Stats. Both types of districts are administered by a commission. The general powers of a joint commission are set forth in section 144.07 and, by reference, in section 62.11(5). A joint commission that operates and maintains sewage treatment facilities has the power to act through regulation and to seek appropriate civil remedies.
In 68 Op. Att'y Gen. at 88-89, it is stated:
 Since a joint sewerage commission has been granted the power of a common council as to those matters which relate to construction, operation or maintenance of the sewerage system, it is empowered within its boundaries to enforce its ordinances by "fine, imprisonment [upon failure to pay such a fine], confiscation and other necessary or convenient means." Sec. 62.11(5), Stats. In other words, a joint sewerage commission could seek to levy a fine for past violations, terminate service for the future or pursue a number of other modes of judicial relief encompassed by the phrase, "civil remedy."
Considered together, the various sections in chapter 144 concerned with joint commissions provide for the transfer of some powers from local government to the joint commission. To operate effectively a joint commission must have sufficient authority over its member governmental units to enable it to carry out its various responsibilities set forth in chapter 144. Because of the special governmental status of Indian Tribes and the unique jurisdictional relationship they have with the state, it is unlikely the commission would *Page 134 
have sufficient authority over a tribal government member to carry out commission activities as anticipated by chapter 144.
State jurisdiction over Indians and Indian Tribes within reservation boundaries is extremely limited. See White MountainApache Tribe v. Bracker, 448 U.S. 136 (1980). As I have indicated in several opinions, Indian Tribes such as the Oneida Tribe are recognized as separate and unique governmental entities. See,e.g., 66 Op. Att'y Gen. 115 (1977); 66 Op. Att'y Gen. 290 (1977); 64 Op. Att'y Gen. 184 (1975). In 65 Op. Att'y Gen. 276, 278 (1976), it is stated: "The Oneida Tribe . . . has the same rights of self-government as do other federally recognized tribes." The Supreme Court has emphasized that "our cases recognize that the Indian tribes have not given up their full sovereignty." UnitedStates v. Wheeler, 435 U.S. 313, 323 (1978). The Court in Wheeler
clearly recognized that the inherent sovereignty of a Tribe is an alternate source of tribal authority, distinct from any powers delegated to the Tribe by the federal government. Id. at 322.
As a result, Indian Tribes such as the Oneida Tribe "are a good deal more than `private, voluntary organizations' . . ." Mazurie,419 U.S. at 557. They possess a certain degree of independent authority "with the power of regulating their internal and social relations." Wheeler, 435 U.S. at 322 (quoting United States v.Kagama, 118 U.S. 375, 381-82 (1886)). See also Mazurie,419 U.S. at 557; White Mountain Apache Tribe. It is not clear whether an Indian Tribe could voluntarily subject itself to the jurisdiction of a joint commission. Because of the uncertainty regarding the jurisdictional relationship between Indian Tribes and the state over environmental matters generally, see 72 Op. Att'y Gen. 54 (1983) and OAG 51-78 (unpublished, July 31, 1978), it is my opinion that the Legislature simply did not have tribal governments in mind when it authorized governmental units to form joint sewerage commissions. Where the Legislature has recognized tribal government as of the same status as local units of government, it has done so explicitly. See, e.g., sec.20.002(13), Stats.
The Oneida Tribe undoubtedly has a significant governmental interest in controlling any conduct or activity such as the discharge of sewage within its territorial jurisdiction that "threatens or has some direct effect on the political integrity, the economic security or the health or welfare of the tribe."Montana v. United States, *Page 135 450 U.S. 544, 566 (1981). Section 144.07, however, does not presently represent a viable way to carry out that interest.
BCL:JDN