STEPHEN J. MENARD, Corporation Counsel Menominee County
You advise that Menominee County and the Menominee Indian Tribe are parties to a series of joint telecommunications agreements dating back to September, 1981. You further state that, for a time after September, 1981, this joint operation was located in a county building. At some subsequent time, the operation was relocated to a tribal building. Recent disagreements have arisen concerning this arrangement, and you ask my opinion on the following questions:
 1. Does sec. 59.245 Stats., "County Telecommunications" which mandates a telecommunication terminal in every county and which mandates that the terminal be installed in the county law enforcement agency, permit the installation and maintenance of a terminal in a tribal facility?
 2. Does sec. 146.70 Stats., which permits joint power agreements between public agencies for providing emergency services permit a joint telecommunication agreement between the County and the Tribe, when sec. 345.05(1)(c) defines public agency as a municipality?
In my opinion, the answer to both questions is yes.
To answer your first question it is necessary to consider section 59.245, Stats., in relation to other statutory provisions which promote joint county/tribal cooperation in law *Page 92 
enforcement matters generally. Section 59.245 provides, in relevant part:
 Every county in the state shall have a telecommunication terminal installed in a county law enforcement agency which is interconnected with the department of transportation and other county, municipal and governmental law enforcement agencies in the TIME (Transaction Information for Management of Enforcement) system.
This statute, to my knowledge, has never been considered in prior court decisions or opinions of the attorney general. Whether section 59.245 permits the location of a joint county-tribal telecommunications system in a tribal building turns on the application of settled rules of statutory construction.
Statutory construction begins with an examination of the language used by the Legislature. State v. Denter, 121 Wis.2d 118,357 N.W.2d 555 (1984). In Denter, the Wisconsin Supreme Court held, "In construing a statute the primary source of construction is the language of the statute itself. . . . If the meaning of the statute is clear and unambiguous on its face, resort to extrinsic aids for the purpose of statutory construction is improper." Denter, 121 Wis.2d at 123, citingState v. Derenne, 102 Wis.2d 38, 45, 306 N.W.2d 12 (1981).
The issue is whether housing a telecommunications terminal in a tribal building pursuant to a joint county-tribal agreement comports with the statutory requirement that "[e]very county in the state shall have a telecommunication terminal installed in acounty law enforcement agency. . . ." Sec. 59.245, Stats. I believe that it does. The language does not explicitly limit the location to the county sheriff's office or any other specific building housing a law enforcement agency. Nor does it imply a strict construction by requiring the terminal to be installed in "the" county law enforcement agency. It merely states that the terminal must be located in "a county law enforcement agency." Sec. 59.245, Stats. Assuming that facility is appropriately *Page 93 
staffed, secured and under the management control of county authorities,[1] a joint telecommunications terminal located in a tribal building is "in a county law enforcement agency," precisely as if the terminal were located in the county sheriff's office. This language is "clear and unambiguous on its face," making further statutory construction unnecessary. Denter,121 Wis.2d at 123.
The Wisconsin Supreme Court has held that counties, as agents of the state, have a role in the enforcement of the criminal law.Green County v. Monroe, 3 Wis.2d 196, 87 N.W.2d 827 (1958). InGreen County, a case involving the construction of a county jail, the court held that "a county is a governmental arm and agency of the state performing primarily the functions of the state locally." Green County, 3 Wis.2d at 199.[2] Specifically, a county is empowered to take steps "necessary in the general administration of justice and particularly in the enforcement of the state's criminal laws." Id. at 200. See also Kyncl v. KenoshaCounty, 37 Wis.2d 547, 555, 155 N.W.2d 583 (1968), quoting Stateex rel. Bare v. Schinz, 194 Wis. 397, 400-01, 216 N.W. 509 (1927) (a county "acts for the state in the administration of justice").
The reasoning of Green County and the supporting cases makes the basic point that counties have long been delegated criminal law responsibilities such as those found in section 59.245. By requiring that every county "shall have a telecommunication terminal . . . interconnected with . . . law *Page 94 
enforcement agencies in the TIME (Transaction Information for Management of Enforcement) system," section 59.245 is simply one explicit means by which a county aids the state "in the general administration of justice and particularly in the enforcement of the state's criminal laws." Green County,3 Wis.2d at 200. The question then becomes whether such assistance can be rendered using a tribal building in the context of a joint county-tribal law enforcement agreement.
A county has only those powers explicitly given or necessarily implied in a grant of authority from the Legislature. Town ofVernon v. Waukesha County, 102 Wis.2d 686, 307 N.W.2d 227
(1981). In Town of Vernon, a case involving the county's power to remove certain roads from the county trunk highway system, the court held, "It is true, of course, that a county board has only such powers as are expressly conferred upon it or necessarily implied from the powers expressly given or from the nature of the grant of power." Town of Vernon, 102 Wis.2d at 689.[3] The court concluded that the power to remove highways from the trunk system was "by express language," or at a minimum by "clear implication from the grant of power to the county. . . ." Id. at 691, 692.
The reasoning of Town of Vernon is applicable to the present situation. As discussed above, a jointly operated telecommunications terminal that is located by mutual agreement in a tribal facility may satisfy the requirements of section 59.245. See Town of Vernon, 102 Wis.2d at 691. Even if this principle is not explicit, however, it is "necessarily implied from the powers expressly given or from the nature of the grant of power." Id. at 689. The county has expressly been given the power to enter into joint county-tribal law *Page 95 
enforcement agreements by the Legislature. Under section59.07 (141), entitled County-Tribal Law Enforcement Programs, "a county board may enter into an agreement and seek funding under s. 165.90." Sec. 59.07 (141), Stats.[4] Under section165.90(1),[5] "Any county that has one or more federally recognized Indian reservations within or partially within its boundaries may enter into an agreement in accordance with s. 59.07 (141) with an Indian tribe located in the county to establish a cooperative county-tribal law enforcement program."[6] It is clear that such arrangements are, by their nature, "cooperative." Sec. 165.90(1), Stats. This language indicates that the parties should be free to locate the joint terminal in the building which best suits their mutual purposes. Thus, the location of the joint terminal in a tribal building by mutual agreement is "necessarily implied" from two statutes explicitly authorizing joint agreements, and from the cooperative "nature of the grant of power." Town of Vernon,102 Wis.2d at 689.
The Wisconsin Supreme Court has also relied on practical administrative interpretations for guidance in interpreting *Page 96 
statutes involving county powers. Town of Vernon, supra. In Townof Vernon, the Court emphasized that recognition of the "administrative practice and practical interpretation" of a statute was appropriate in construing a county's powers. Town ofVernon, 102 Wis.2d at 693. See also Chappy v. LIRC, 136 Wis.2d 172,180, 401 N.W.2d 568 (1987) (the court "does defer to a certain extent to the interpretation and application of the statute by the enforcing agency") (citations and editing omitted).
The reasoning of Town of Vernon concerning administrative interpretation is persuasive on the present facts. Section 59.245 is administered by the Wisconsin Department of Justice, Division of Law Enforcement Services. Specifically, the statute is applied by the Crime Information Bureau (CIB) which, in cooperation with federal authorities such as the Federal Bureau of Investigation (FBI), compiles and controls access to records of prior criminal activity. On April 7, 1987, Mr. Robert L. McGrath, Director of CIB, sent a letter to an official with the Menominee Tribal/County Telecommunications System. That official had asked, as is being asked here, whether the joint terminal could be located in a tribal building under section 59.245. The director of CIB responded, in pertinent part:
 It is our understanding that the intent of ss. 59.245 is to ensure that each county in Wisconsin provides law enforcement access to the TIME System through any law enforcement agency, sheriff or police department. By policy, the physical location of the terminal must be within a law enforcement agency or in a secure facility under the management control of a law enforcement agency. Various law enforcement agencies on the TIME System are served by centralized dispatch centers that are physically separated from the law enforcement agencies they serve and this has not presented any legal or policy problems.
 A central dispatch center located outside of a law enforcement agency is permitted, provided that the TIME *Page 97 
System terminal is physically secure. It must also be secure from unauthorized access and if the dispatch center is staffed by non-sworn personnel, the operators must be trained by the Crime Information Bureau and be under the management control of law enforcement.
 Based on our review of the TIME System operational procedures followed in Menominee County, I am unable to identify any conflict with law or policy.
CIB's conclusion, that the implementation of the joint county-tribal law enforcement agreement using a tribal building is proper, is consistent with the view of federal law enforcement authorities. The National Crime Information Center (NCIC), within the FBI, controls access to information systems such as the TIME system. The NCIC permits access only when a requesting agency meets detailed criteria qualifying it as a "criminal justice agency" pursuant to 28 U.S.C.A. § 534 (West Supp. 1991) and28 C.F.R. § 20.3(c) (1990), or when the agency fits within certain other exceptions not relevant here. See NCIC OperatingManual (May 31, 1989 ed.), sec. 1.3.1, at 13-1. The Menominee Tribal/County Telecommunications System has met these requirements and has been issued a nine-character Originating Agency Identifier (OAI) giving it access to the TIME system. The existence of the OAI demonstrates that the Menominee Tribal/County Communications System, as currently operated, "has met the qualifying criteria" as a criminal justice agency for the NCIC's purposes. Id., sec. 1.4, at 13-4.
In view of the existing operating procedures of various law enforcement agencies within the TIME network, therefore, CIB has interpreted section 59.245 as permitting location of a central terminal "within a law enforcement agency or in a secure facility under the management control of a law enforcement agency." CIB specifically concluded that the joint operation in Menominee County appeared to meet this definition at the time *Page 98 
of the review of the joint operational procedures. The NCIC makes no determination the operation complies with state law.
For the reasons discussed above, I believe section 59.245 permits locating the joint county-tribal terminal in a tribal building as long as a county law enforcement agency maintains effective management control over the terminal. This does not, of course, require Menominee County to accept this arrangement, or even to continue the joint county-tribal agreement as a whole. You indicate in your letter that the county and the tribe have had disagreements as to the use of the terminal. The county retains "broad powers" to resolve these problems by, for example, further negotiation with the tribe. Kenosha County C.H. Local v.Kenosha County, 30 Wis.2d 279, 283, 140 N.W.2d 277 (1966). I conclude only that section 59.245 permits this arrangement, not that it requires it.
For these reasons, I believe that section 59.245 permits the location of joint county-tribal telecommunications terminal in a tribal building.
Your second question is:
 2. Does sec. 146.70 Stats., which permits joint power agreements between public agencies for providing emergency services permit a joint telecommunication agreement between the County and the Tribe, when sec. 345.05(1)(c) defines public agency as a municipality?
Initially, I note that section 146.70 seems largely irrelevant to the issues raised in your first question, which involved the TIME system. Section 146.70 is entitled "Statewide emergencyservices number," and applies to systems "transmitting requests
for law enforcement, fire fighting and emergency medical and ambulance services to the public safety agencies providing such services." Sec. 146.70(2)(b), Stats. In colloquial language, this statute deals with providing "911 service" to Wisconsin citizens.See also secs. 146.70(2)(c) and 146.70(1)(c), Stats. Such service has no involvement with the TIME system. The TIME system does not receive calls about emergencies as they occur. TIME *Page 99 
is a recordkeeping system which runs background checks for previous arrests, outstanding warrants and similar matters on individuals. There is no interrelationship between the TIME system and the "911" system.[7] Your letter provides no explicit indication that an aspect of the agreement between the county and the tribe involves 911 services. If there is no such element of the agreement, I am of the opinion that section 146.70 does not apply to the joint county-tribal agreement. Because you do indicate in your letter that you filed the joint agreement with the Department of Justice pursuant to a filing requirement in section 146.70(9)(c), however, I will assume section 146.70 has some potential application to the present facts.
Section 146.70(9)(a) provides, "In implementing a basic or sophisticated system under this section, public agencies . . . shall annually enter into a joint powers agreement." The term "public agency" is then defined at section 146.70(1)(f) as "any municipality as defined in s. 345.05(1)(c) or any state agency which provides or is authorized by statute to provide . . . emergency services." Section 345.05(1)(c) then defines "municipality" as "any county, city, village, town, school district . . . sewer district, drainage district and, without restriction because of failure of enumeration, any other political subdivision of the state." The issue then becomes whether a joint agreement between the county and the tribe is permitted where Indian tribes are not specifically enumerated in this definition of a municipality. In my opinion, such an agreement is permissible.
The existence of a specific statute precludes the application of more general laws. Rice v. City of Oshkosh, 148 Wis.2d 78, 435 N.W.2d 252 (1989). In Rice, a specific statute permitting a town to regulate public improvements governed over a general statute allowing a city to enact ordinances on a variety of matters. In ruling for the town, the Wisconsin Supreme Court *Page 100 
held that "specific statutes supersede general statutory provisions."Rice, 148 Wis.2d at 88. See also Tenpas v. DNR, 148 Wis.2d 579,592, 436 N.W.2d 297 (1989) ("specific legislative treatment" prevails over "general . . . requirements").
The reasoning of Rice and Tenpas is applicable to your question. As noted in my discussion of your first question, the Legislature has passed two statutes specifically authorizing counties to enter into joint law enforcement agreements with Indian tribes. See secs. 59.07(141) and 165.90(1), Stats.; seealso 78 Op. Att'y Gen. 85, 86 (1989) and 78 Op. Att'y Gen. 122, 131-32 (1989). In contrast, section 146.70(1)(f) borrows a general definition of municipality from section 345.05(1)(c), a statute dealing with an issue (municipal liability for motor vehicle accidents) which has no specific application to county-Indian relations. Therefore, the fact that the term "Indian tribe" was not included in the various governmental bodies listed in the definition of a "public agency" in section 345.05(1)(c) is not controlling here. A joint agreement to accept calls concerning, for example, crimes in progress, is plainly an aspect of county-tribal law enforcement. Under section 59.07 (141), "a county board may enter into an agreement" with an Indian tribe. Section 165.90(1) also specifically authorizes "an agreement . . . with an Indian tribe. . . ." These two statutes explicitly and specifically dealing with county-tribal law enforcement control over a general definition of municipalities imported from another statute with no relation to that subject. This is because "specific statutes supersede general statutory provisions." Rice, 148 Wis.2d at 88.
For this reason, even if section 146.70 is applicable to your situation, I believe the answer to your second question would also be yes.
JED:JDN
[1] See discussion below relating to the administrative interpretation given to section 59.245 by the Crime Information Bureau within the Wisconsin Department of Justice.
[2] For another formulation of this concept, see Brown Countyv. H SS Department, 103 Wis.2d 37, 43, 307 N.W.2d 247 (1981) ("This court has often expressed the fundamental rule that counties, as creatures of the legislature, exist largely for purposes of political organization and administrative convenience.") See also 77 Op. Att'y Gen. 230, 234 (1988), quoting McQuillen, Municipal Corporations § 1.24 (3d ed. 1987).
[3] For a restatement of this rule, see St. ex rel. Teunas v.Kenosha County, 142 Wis.2d 498, 504, 418 N.W.2d 833 (1988). Seealso Dane County v. H SS Dept., 79 Wis.2d 323, 329-30,255 N.W.2d 539 (1977); State ex rel. Conway v. Elvod, 70 Wis.2d 448,450, 234 N.W.2d 354 (1975).
[4] This statute was recently amended to make explicit that counties were empowered to "enter into an agreement" with a tribe for joint law enforcement. See 1987 Wisconsin Act 326, sec. 6, effective July 1, 1988.
[5] Section 165.90(1) was amended by 1989 Wisconsin Act 31. However, that amendment relates to the funding of county-tribal law enforcement plans, which is not at issue here.
[6] Because of the existence of both sections 59.07 (141) and165.90(1), specifically authorizing these agreements, I do not apply the strict construction used in certain previous opinions of the attorney general involving Indians where such explicit authorization was not apparent. See generally 76 Op. Att'y Gen. 189, 196(1987) (concluding Indian tribe not a municipality for purposes of sewerage districts under section 66.20(4)); 72 Op. Att'y Gen. 132 (1983) (concluding that an Indian tribe is not a "governmental unit" within the meaning of section 144.07(4)(a), for purposes of a joint sewerage district); 66 Op. Att'y Gen. 335 (1977) (concluding that because statewide Indian legal services provider was not a "`local' public defender organization" within the meaning of section 977.07, the State Public Defender Board could not contract with it to provide such services).
[7] This information was provided to me by CIB. *Page 101